978 So.2d 134 (2008)
Charles J. CRIST, Jr., et al., Appellants,
v.
FLORIDA ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, INC., Appellee.
No. SC08-02.
Supreme Court of Florida.
March 13, 2008.
*137 Bill McCollum, Attorney General, Scott D. Makar, Solicitor General, and Louis F. Hubener, Chief Deputy Solicitor General, Tallahassee, Florida, for Appellants.
Sonya Rudenstine, Gainesville, Florida, and D. Todd Doss, Lake City, Florida, for Appellee.
PARIENTE, J.
The issue in this case is whether the Legislature violated article V, section 18 of the Florida Constitution by enacting chapter 2007-62, Laws of Florida, which creates five Offices of Criminal Conflict and Civil Regional Counsel to handle representation in criminal cases where a public defender has a conflict. We conclude that the creation of the five regional offices to handle representation in criminal cases where a public defender has a conflict does not implicate article V, section 18, which requires that the public defender in each circuit be elected. The legislative scheme is an organizational structure that supplants the prior system of private registry counsel and does not establish de facto public defenders in violation of the constitution. For these reasons, we reverse the trial court's grant of a petition for writ of quo warranto and conclude that the Legislature did not act in contravention to article V, section 18 by enacting the legislation.[1]

FACTS AND PROCEDURAL HISTORY
We begin with an outline of the legislation that is currently under attack. On May 24, 2007, the Legislature enacted chapter 2007-62, Laws of Florida (the "Act"), creating a revamped system of court-appointed counsel to represent indigent defendants primarily in those cases in which the public defender has a conflict. The Act establishes five Offices of Criminal Conflict and Civil Regional Counsel ("OCCCRC") to be located within the geographic boundaries of each of the five district courts of appeal. § 27.511(1), Fla. Stat. (2007). Each of the OCCCRC is headed by a regional counsel, who is appointed by the Governor to a four-year term and must be either a member in good standing of The Florida Bar or of the bar of another state for the preceding five years. The process by which regional counsel are appointed is as follows: the Supreme Court Judicial Nominating Commission submits three qualified candidates to the Governor, the Governor appoints a regional counsel from this list (unless it is in the best interests of the fair administration of justice for the Governor to request the submission of three new candidates), and the Senate must confirm each nominee. Id. § 27.511(3). The regional counsel is in charge of hiring assistant regional counsel and other support staff pursuant to the General Appropriations Act. § 27.53(4), Fla. Stat. (2007). Although each office is assigned to the Justice Administrative Commission for administrative *138 purposes, they are "not subject to control, supervision, or direction by the commission in the performance of their duties." § 27.511(2), Fla. Stat.
The Legislature established the OCCCRC "to provide adequate representation to persons entitled to court-appointed counsel under the Federal or State Constitution or as authorized by general law . . . in a fiscally sound manner, while safeguarding constitutional principles." Id. § 27.511(1). Accordingly, the Act amended the system by which indigent persons are provided with legal representation at the public's expense, as required by the state and federal constitutions or as authorized by general law. § 27.40, Fla. Stat. (2007). As was the case under the previous system, the public defender in each circuit is primarily responsible for representing indigent defendants who have been charged or arrested for an enumerated list of criminal offenses and in a limited number of civil proceedings. See § 27.51(1), Fla. Stat. (2007). However, in cases where the public defender determines that a conflict of interest exists, rather than appointing private counsel from a registry list, the new system mandates that the OCCCRC be appointed first. See § 27.511(5), Fla. Stat.[2] Then, if one of the OCCCRC has a conflict, the Act requires the court to appoint private counsel from the registry. § 27.40(2), Fla. Stat. The significant change in organization was in part motivated by Revision 7 to Article V, which shifted the majority of the burden of funding the court system from the counties to the State, and also to respond to the chronic problem of conflict representation in indigent defense cases. See Fla. S. Comm. on Crim. & Civ. Just. Approp., PCS for SB 1088 (2007) Staff Analysis 1 (Mar. 19, 2007). Subsequently, pursuant to the procedures set forth in the Act, the Governor appointed the five Regional Counsel.
In the wake of the gubernatorial appointments, the Florida Association of Criminal Defense Lawyers ("FACDL") filed a petition for writ of quo warranto, asserting that the Governor exceeded his constitutional authority by appointing the regional counsel.[3] In the petition, FACDL contended that the Act improperly established "a second tier of public defender offices to handle criminal conflict cases." In response to the petition, the Governor asserted that the Act did not create a "parallel" system of unelected public defenders, but rather a system to represent criminal defendants only where the public defender is unable to do so. Ultimately, *139 the trial court agreed with FACDL and issued an order granting the petition.
Initially, the trial court determined that FACDL had standing to bring the action because it was a member of the general public that is authorized to enforce a public right, such as state officials performing their duties in conformity with the constitution.[4] The court then determined that the regional counsel "are essentially public defenders that have not been subject to the qualifications" of the constitution. The court found that the Legislature has attempted to create a hybrid state office, which is a public defender for purposes of funding but not for purposes of the qualifications under article V, section 18. Because the constitution expressly requires public defenders to be elected and reside in the circuit, the court concluded that the Legislature was improperly attempting "to amend the Constitution by legislative fiat." The trial court therefore concluded that the Governor acted outside his authority by appointing the five regional counsel and the Senate would exceed its authority by confirming the appointments. Accordingly, the trial court quashed the five appointments, enjoined any further action by the Secretary of State and the Senate to confirm the appointments, and enjoined the regional counsel from performing any duties authorized under the Act. This appeal followed.

ANALYSIS
The issue before the Court is whether the five Offices of Criminal Conflict and Civil Regional Counsel and the five appointed regional counsel are public defenders subject to the qualifications set forth in article V, section 18 of the Florida Constitution. Of particular relevance to the issue before the Court are the provisions of chapters 27 and 29, Florida Statutes, which created the OCCCRC and set forth guidelines for how they will operate within the current indigent defense system. Because the issue before the Court involves the determination of a statute's constitutionality and the interpretation of a provision of the Florida Constitution, it is a question of law subject to de novo review. See Fla. Dep't of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005); Zingale v. Powell, 885 So.2d 277, 280 (Fla. 2004).
Although the Court's review is de novo, statutes come clothed with a presumption of constitutionality and must be construed whenever possible to effect a constitutional outcome. See City of Gainesville, 918 So.2d at 256 (quoting Fla. Dep't of Revenue v. Howard, 916 So.2d 640, 642 (Fla.2005)). As this Court has stated, "[s]hould any doubt exist that an act is in violation . . . of any constitutional provision, the presumption is in favor of constitutionality. To overcome the presumption, the invalidity must appear beyond reasonable doubt, for it must be assumed the legislature intended to enact a valid law." Franklin v. State, 887 So.2d 1063, 1073 (Fla.2004). If possible, the act must be construed "to avoid unconstitutionality and to remove grave doubts on that score." Id.
When reviewing constitutional provisions, this Court "follows principles parallel to those of statutory interpretation." *140 Zingale, 885 So.2d at 282. First and foremost, this Court must examine the actual language used in the Constitution. City of Gainesville, 918 So.2d at 256. "If that language is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written." Fla. Soc. of Ophthalmology v. Fla. Optometric Ass'n, 489 So.2d 1118, 1119 (Fla.1986). Additionally, this Court "endeavors to construe a constitutional provision consistent with the intent of the framers and the voters." Zingale, 885 So.2d at 282 (quoting Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm'n, 838 So.2d 492, 501 (Fla.2003)). This is because:
The fundamental object to be sought in construing a constitutional provision is to ascertain the intent of the framers and the provision must be construed or interpreted in such manner as to fulfill the intent of the people, never to defeat it. Such a provision must never be construed in such manner as to make it possible for the will of the people to be frustrated or denied.
Id. (quoting Caribbean, 838 So.2d at 501).
With these interpretation principles in mind, we first examine the origins of the Office of the Public Defender and discuss the actual language of article V, section 18 of the constitution, the provision that sets forth the qualifications for public defenders in this State. Next, we review the relevant provisions of chapter 2007-62, which established the OCCCRC and set forth the details of the OCCCRC system. Lastly, we evaluate whether the OCCCRC are essentially public defenders that should be subject to the requirements of article V, section 18.

A. Public Defenders Under Article V, Section 18 of the Constitution
In an effort to meet its responsibility to provide counsel to indigent defendants, as guaranteed under the Sixth Amendment to the U.S. Constitution and applied to the states in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Florida Legislature first established the Office of the Public Defender in 1963. See ch. 63-409, § 1, Laws of Fla. (enacting section 27.50, Florida Statutes (1963), which created the Office of the Public Defender). In State ex rel. Smith v. Brummer, 443 So.2d 957, 958-59 (Fla.1984), a case involving the authority of the public defender to accept an appointment from a federal court, this Court briefly discussed the history and purposes of the Office of the Public Defender. We explained:
The Office of the Public Defender is a creature of the state constitution and of statute, not of the common law. The State of Florida, in order to meet its responsibility to provide the assistance of counsel guaranteed to defendants against state action by the sixth amendment of the United States Constitution, made applicable to states through the fourteenth amendment, has created this office in article V, section 18 of the Florida constitution. The functioning of that office is regulated by statute, sections 27.50-.59, Florida Statutes (1981), and by court rule. Florida Rule of Criminal Procedure 3.111. Section 27.51 sets forth the duties of the public defender: To represent any indigents who face possible loss of liberty, or any indigent minor alleged to be a delinquent child, and to handle felony appeals in the state or federal courts.
Brummer, 443 So.2d at 959 (footnote omitted); accord State ex rel. Smith v. Jorandby, 498 So.2d 948, 950 (Fla.1986).
The Legislature approved a proposal to amend the constitution and elevate the Office of the Public Defender to the level of a constitutional officer, which was approved by the electorate and adopted in 1972. See art. V, § 18, Fla. Const.; see *141 also Summary of Amendment Revising Florida Court Structure, Senate Joint Res. No. 52D (noting that "[t]he position of public defender gains constitutional status" in article V in the 1972 amendment). Article V, section 18 of the Florida Constitution, entitled "Public Defenders," has remained relatively unchanged since its adoption. The constitutional provision states:
In each judicial circuit a public defender shall be elected for a term of four years, who shall perform duties prescribed by general law. A public defender shall be an elector of the state and reside in the territorial jurisdiction of the circuit and shall be and have been a member of the Bar of Florida for the preceding five years. Public defenders shall appoint such assistant public defenders as may be authorized by law.
Id.[5]
Although the actual text of section 18 has been subject to little interpretation by the judiciary, the plain language is clear. The provision essentially sets forth the following minimal qualifications for the position: (1) each judicial circuit shall have one public defender; (2) the public defender must be elected for a term of four years; and (3) the public defender must be an elector of the State, reside in the territorial jurisdiction of the circuit in which he or she is elected, and be a member in good standing of The Florida Bar for the preceding five years. See id. Beyond these minimal qualifications, the constitution does not specify any additional details about how the public defender in each circuit is to operate or what duties are to be performed. In fact, section 18 clearly and unequivocally grants the Legislature the authority to control the duties to be performed, which naturally includes the types of cases for which public defenders are appointed.
Other than article V, section 18, which only discusses a public defender's qualifications and does not restrict the types of cases that are to be handled, there are no provisions in the constitution that restrict the Legislature's inherent authority to, at a minimum, establish a system of court-appointed counsel to handle the public defender's conflict cases. As this Court has previously noted:
The Constitution of this state is not a grant of power to the Legislature, but a limitation only upon legislative power, and unless legislation be clearly contrary to some express or necessarily implied prohibition found in the Constitution, the courts are without authority to declare legislative Acts invalid. The Legislature may exercise any lawmaking power that is not forbidden by organic law.
Chiles v. Phelps, 714 So.2d 453, 458 (Fla. 1998) (quoting Savage v. Bd. of Pub. Instruction, 101 Fla. 1362, 133 So. 341, 344 (1931)). "Absent a constitutional limitation, the Legislature's `discretion reasonably exercised is the sole brake on the enactment of legislation.'" Bush v. Holmes, 919 So.2d 392, 406 (Fla.2006) (quoting State v. Bd. of Pub. Instruction, 126 Fla. 142, 170 So. 602, 606 (1936)).
*142 Thus, the mere creation of the OCCCRC as a system to handle cases in which the public defender has a conflict appears to be well within the Legislature's plenary power. However, in the context of this case, the concern is not whether the Legislature has the plenary authority to create a system to handle public defender conflict cases, but whether the system as created violates the qualifications for public defenders set forth in article V, section 18.
Because section 18 is essentially a qualifications provision, that is, one that sets forth the minimum qualifications for a certain constitutional office, as opposed to one that outlines specific duties that such an office must perform, this Court's jurisprudence in this area is the most relevant. "We have consistently held that statutes imposing additional qualifications for office are unconstitutional where the basic document of the constitution itself has already undertaken to set forth those requirements." State ex rel. Askew v. Thomas, 293 So.2d 40, 42 (Fla.1974) (holding that no qualifications were created in a constitutional provision stating that school board members shall be chosen "as provided by law," because that provision only discussed the manner of choosing members not what their qualifications had to be); accord Cook v. City of Jacksonville, 823 So.2d 86, 91 (Fla.2002) ("[T]he Legislature [i]s prohibited from adding to or taking from the qualifications . . . of this constitutionally authorized office.") (citing Thomas v. State ex rel. Cobb, 58 So.2d 173, 183 (Fla.1952)). For instance, the Court has found a law unconstitutional where it attempted to require a school board official to have a specific teaching certificate, where the constitution already listed the requirements. See Cobb, 58 So.2d at 176, 183.
Likewise, the Legislature is prohibited from adding to the disqualifications of a constitutional office, where limitations are specifically expressed in the constitution, such as term limits for elected officials. See Cook, 823 So.2d at 91, 94-95 (holding that local charters unconstitutionally provided for term limits on city and county officers where article VI, section 4 of the Florida Constitution set forth the only disqualifications applicable to county offices); Maloney v. Kirk, 212 So.2d 609, 612 (Fla.1968) (holding a law unconstitutional that purported to amend the disqualifications for governor, namely, to disqualify persons who had accepted improper influences in an election, in an effort to avoid the results of an election, even though the disqualifications were clearly outlined in the constitution); In re Investigation of a Circuit Judge of the Eleventh Judicial Circuit of Florida, 93 So.2d 601, 604 (Fla.1957) (holding that the Legislature was not authorized to enact a statute providing for the removal of a judge in a substantially different manner than outlined in the constitution).
A review of our case law concerning constitutional provisions that set forth the qualifications for office leads us to the following conclusions. If article V, section 18 of the constitution sets the qualifications for the Office of the Public Defender, namely, that there be one elected public defender in each circuit, who is an elector of the State, resides in that circuit, and has been a member in good standing of The Florida Bar for the preceding five years, then the Legislature is forbidden from substantially altering these qualifications. See Cook, 823 So.2d at 91; Thomas, 293 So.2d at 42; Maloney, 212 So.2d at 612. However, if the Legislature has not created another public defender and consequently has not altered the qualifications for that position, then the Act does not collide with article V, section 18. Accordingly, we next examine the pertinent provisions of chapter 2007  62 to shed light on *143 the overarching question in this case  whether the OCCCRC and regional counsel are public defenders subject to article V, section 18 of the constitution.

B. The System of Court-Appointed Counsel Under Chapter 2007-62
Chapter 2007-62 revised the system of court-appointed representation contained in chapter 27, Part III of the Florida Statutes, which deals with "Public Defenders and Other Court-Appointed Counsel."[6] The Legislature's intent in revising the system was clearly expressed as follows:
(1) The Legislature finds that the creation of offices of criminal conflict and civil regional counsel and the other provisions of this act are necessary and best steps toward enhancing the publicly funded provision of legal representation and other due process services under constitutional and statutory principles in a fiscally responsible and effective manner.
(2) It is the intent of the Legislature to facilitate the orderly transition to the creation and operation of the offices of criminal conflict and civil regional counsel, as provided in this act, in order to enhance and fiscally support the system of court-appointed representation for eligible individuals in criminal and civil proceedings. To that end, the Legislature intends that the five criminal conflict and civil regional counsel be appointed as soon as practicable after this act becomes law, to assume a term beginning on July 1, 2007. . . . The Justice Administrative Commission shall assist the regional counsel as necessary in establishing their offices. In addition, it is the intent of the Legislature that the various agencies and organizations that comprise the state judicial system also assist with the transition from current law to the creation and operation of the regional offices.
Ch.2007-62, § 31(1)-(2), Laws of Fla.
Consistent with this intent, the Legislature amended section 27.40, which details the process by which indigent persons are appointed counsel, as follows:
27.40 Court-appointed counsel; circuit registries; minimum requirements; appointment by court. 
(1) Counsel shall be appointed to represent any individual in a criminal or civil proceeding entitled to court-appointed counsel under the Federal or State Constitution or as authorized by general law. The court shall appoint a public defender to represent indigent persons as authorized in s. 27.51. The office of criminal conflict and civil regional counsel shall be appointed to represent persons in those cases in which provision is made for court-appointed counsel but the public defender is unable to provide representation due to a conflict of interest or is not authorized to provide representation.
(2)(a) Private counsel shall be appointed to represent persons indigents in those cases in which provision is made for court-appointed counsel but the office of criminal conflict and civil regional counsel public defender is unable to provide representation due to a conflict of interest or is not authorized to provide representation.
(b)(2) Private counsel appointed by the court to provide representation shall *144 be selected from a registry of individual attorneys maintained under this section established by the circuit Article V indigent services committee or procured through a competitive bidding process.
Ch.2007-62, § 1, Laws of Fla. (revisions shown in underline and strike-through). As is evident from this provision, the Legislature continues to rely, first and foremost, on the public defenders to provide court-appointed counsel to indigent persons in criminal and civil proceedings. It is only when a public defender is unable to provide representation because of a conflict of interest or is not authorized to provide representation that a regional counsel office is appointed in its place. Id. Furthermore, the Legislature maintains the registry system whereby private counsel are appointed in cases in which neither the public defender nor a regional counsel can provide representation. Id.[7]
Beyond the process by which counsel is appointed to represent indigent persons, we also examine the provisions concerning the duties of both the public defender and the OCCCRC. This is because a comparison of the duties of each entity is directly relevant to determining whether the OCCCRC are in fact public defenders. As to the duties of the public defender, section 27.51, Florida Statutes (2007) (entitled "Duties of the public defender"), requires that it provide representation to any indigent person who is (1) under arrest for or charged with a felony, a misdemeanor authorized to be prosecuted by the state attorney, violations of chapter 316 punishable by imprisonment, criminal contempt, a violation of a local ordinance if the county has contracted with the public defender and the accused is subject to imprisonment upon conviction; (2) alleged to be a delinquent child pursuant to a petition filed in circuit court; (3) sought by petition to be involuntarily committed for mental illness under chapter 394, as a sexually violent predator under chapter 394, or to residential services as a person with developmental disabilities under chapter 393; (4) appealing a conviction and sentence of death to this Court on direct appeal; or (5) appealing a matter in any of the preceding situations. See id. § 27.51(1), Fla. Stat. Similarly, the OCCCRC are required to provide representation to indigent defendants in exactly the same types of criminal cases as the public defender. See § 27.511(5), Fla. Stat. (2007). However, though the types of criminal cases handled may be the same, the fact that the OCCCRC only step in when the public defender has a conflict is key to our determination that the OCCCRC are not in fact public defenders. We will now endeavor to explain why we reach this conclusion.

C. Whether the OCCCRC are de Facto Public Defenders
In deciding whether the OCCCRC are public defenders for purposes of the constitution, the Court must essentially define their legal character. FACDL relies almost exclusively on the Legislature's statements in sections 29.001(1), Florida Statutes (2007), and 29.008(1), Florida Statutes (2007), which define the OCCCRC *145 as public defenders. In section 29.001(1), the Legislature defines the offices of the public defenders "to include the enumerated elements of the . . . 20 public defenders' offices and five offices of criminal conflict and civil regional counsel." Similarly, in section 29.008(1), the Legislature states that "the term `public defenders' offices' includes the offices of criminal conflict and civil regional counsel." However, these two clauses are the only provisions in the Act defining the OCCCRC as public defenders, are contained in chapter 29 ("Court System Funding"), and are used solely for purposes of implementing the constitutional guidelines concerning funding.
In the context of our constitutional inquiry in this case, we agree with the Governor that the legal character of the OCCCRC should depend on what they do, not on how they might be characterized for purposes of funding. Accordingly, we reject the assertion that the OCCCRC are public defenders simply because they are defined as such for the sole purposes of funding. Rather, we focus on the duties of the OCCCRC as compared to those of the public defender. Initially, as just discussed, we acknowledge that there is no difference between the types of criminal cases that are handled by the public defender and the OCCCRC. Thus, there is some overlap between the OCCCRC and the public defender when it comes to the types of criminal cases each entity handles.
What is critical to our decision is that the OCCCRC are appointed in criminal cases only where the public defender must withdraw due to a conflict of interest. See § 27.511(5), Fla. Stat. Therefore, the OCCCRC do not compete or otherwise act concurrently with the public defender  it is only when the public defender steps aside that a regional counsel steps in.[8] In fact, section 27.51 was not revised by chapter 2007-62. This is significant because, despite the creation of the OCCCRC, the public defender maintains primary responsibility for representation in all criminal cases, as it has since the public defender system was created in 1963. Moreover, by creating the OCCCRC, the Legislature did not transfer all of the typical responsibilities of the public defender and a bulk of its funding to an appointed office, leaving the elected public defender with only nominal duties. To the contrary, the OCCCRC are an essential safety net that are only utilized when the public defender has a conflict.
Because the OCCCRC do not perform the duties of the public defender, we distinguish this case from our decision in Bush v. Holmes, 919 So.2d 392 (Fla.2006). In Holmes, this Court reviewed the constitutionality *146 of a statute that entitled children to use vouchers, which transferred money from the public school system to a scholarship account that was used to pay for attendance at a private school. Id. at 401-02. The Court ruled that the statute was unconstitutional because it violated article IX, section 1(a), Florida Constitution, which stated that "[a]dequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools." The Court reasoned that because the constitutional provision expressly provides for the manner of doing a thing, such as a uniform system of public education, "it impliedly forbids its being done in a substantially different manner." Holmes, 919 So.2d at 407 (quoting Weinberger v. Bd. of Pub. Instruction, 93 Fla. 470, 112 So. 253, 256 (1927)) (applying the principle of "expressio unius est exclusio alterius"). Therefore, because the constitution provided for the manner in which the State was to provide a free education to its children, namely, a uniform system, the statute was unconstitutional in that it authorized the diversion of funds from the uniform public system to a competing private system. Id. at 407-09.
In contrast, the constitutional provision at issue here provides only for the qualifications of public defenders and expressly reserves to the Legislature the right to determine the manner of how those offices are to function. See art. V, § 18, Fla. Const. If the provision explicitly detailed the duties of the public defender or how the system for dealing with conflicts should be established, the Legislature would certainly be violating the constitution by creating a conflict system that supplanted those principles. However, that is not the case here. Furthermore, the fact that the OCCCRC neither compete with nor displace the public defenders in any of their statutorily assigned duties distinguishes this case from Holmes. Actually, the OCCCRC system is more comparable to the program that the Court found unaffected by its decision in Holmes, namely, a statute that authorized special needs children to attend private schools at public expense if the public system was unable to meet their needs. 919 So.2d at 411-12. Similarly, it is only when a public defender has a conflict and is unable to meet the representation needs of an indigent defendant that a regional counsel is appointed in its place.
Additionally, we consider the lack of any duplication in any statutory responsibilities dispositive in this case because the OCCCRC no more supplant the public defender than did the system of private registry counsel, which was in place prior to the Act and is currently responsible for representation when one of the OCCCRC has a conflict. Indeed, there appears to be no significant legal difference between the current OCCCRC system and the prior system of appointing private counsel in conflict cases. Other than the fact that the OCCCRC are government offices and the private registry counsel are independent contractors, their responsibilities are identical  to represent indigent defendants in criminal cases when the public defender has a conflict.

D. Purported Sixth Amendment Violations
We reject FACDL's attempt to distinguish private registry counsel from the OCCCRC based on a purported lack of independence. Essentially, FACDL asserts that representation by an appointed attorney  as opposed to an elected public defender  runs the risk of violating an indigent defendant's Sixth Amendment right to effective assistance *147 of counsel.[9] However, FACDL has cited no evidence or case law to support the proposition that the creation of a separate "appointed" office to handle a public defender's conflict cases implicates the independent professional responsibilities of the attorneys who work in those offices or other constitutional rights to effective counsel under the Sixth Amendment or the Florida Constitution.
In State ex rel. Smith v. Brummer, 426 So.2d 532, 533 (Fla.1982), this Court emphasized:
The state is constitutionally obliged to respect the professional independence of the public defenders whom it engages. The decision in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), established the right of state criminal defendants to the "[g]uiding hand of counsel at every step of the proceedings against [them]." Id. at 345, 83 S.Ct. at 797 (quoting from Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)).
The United States Supreme Court opinion in Polk County v. Dodson, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), concisely summarizes this Court's view concerning the primary purpose of the public defender. Quoting from Ferri v. Ackerman, 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979), the Court agreed that
His [the public defender's] principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of the effective performance of his responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation.
As Brummer indicates, the independence of the public defender is of utmost importance to its duties to indigent defendants.
In addition, this Court has also noted that "the public defender is an advocate, who once appointed owes a duty only to his client, the indigent defendant. His role does not differ from that of privately retained counsel." Schreiber v. Rowe, 814 So.2d 396, 398 (Fla.2002). Whether an indigent defendant is represented by an elected public defender, the appointed regional counsel or a private attorney appointed by the court, the attorney has an independent professional duty to "effectively" and "zealously" represent his or her client. See Wilson v. Wainwright, 474 So.2d 1162, 1164 (Fla.1985) ("[T]he basic requirement of due process in our adversarial legal system is that a defendant be represented in court, at every level, by an advocate who represents his client zealously within the bounds of the law. Every attorney in Florida has taken an oath to do so and we will not lightly forgive a breach of this professional duty in any case.").
In the context of the Sixth Amendment, effective representation does not depend upon the office structure from which the attorney came or for whom the attorney works, but the actual legal representation provided to the individual client. For example, when looking at the compensation rates for private attorneys in a criminal case, this Court in Makemson v. Martin County, 491 So.2d 1109 (Fla.1986), ruled that a statute imposing a maximum fee structure for court-appointed *148 counsel was unconstitutional as applied in cases where exceptional circumstances required counsel to invest more time and effort to effectively represent the client. Id. at 1114. The Court concluded that an arbitrary fee cap unconstitutionally affected a defendant's Sixth Amendment right by refusing to allow the trial court to compensate counsel for spending the time necessary to provide the defendant with effective representation. Id.
We reached a similar result in Schommer v. Bentley, 500 So.2d 118, 120 (Fla. 1986), which involved the constitutionality of a maximum fee statute as it related to the compensation of two attorneys on a single charge, and in Olive v. Maas, 811 So.2d 644, 654 (Fla.2002), concerning the application of maximum fee schedules in capital collateral cases. In both of these cases the Court followed its reasoning in Makemson and concluded that an indigent defendant's Sixth Amendment rights would be violated if in exceptional circumstances counsel's fees were improperly limited. Id.; Schommer, 500 So.2d at 120. Conversely, in Hatten v. State, 561 So.2d 562 (Fla. 1990), the Court granted a mandamus petition and concluded that the Public Defender for the Tenth Judicial Circuit had not provided Hatten with effective representation where, due to a backlog, it failed to safeguard Hatten's interests and "act with reasonable diligence" in filing briefs in his case. Id. at 565.
These decisions indicate that it is not the form of representation that implicates the Sixth Amendment, but rather a question of whether the representation itself is effective. Accordingly, the creation of the OCCCRC does not implicate any of the concerns at issue in Makemson and its progeny or Hatten, such as the maximum amount of time that can be expended or the maximum compensation an attorney may be paid in an individual case. Thus, we conclude that the mere creation of the OCCCRC does not adversely impact either the independent judgment of the appointed attorneys or the right to effective representation under the Sixth Amendment.

CONCLUSION
Based on the foregoing, we conclude that the Offices of the Criminal Conflict and Civil Regional Counsel are not a second-tier "appointed" public defender system in violation of article V, section 18 of the Florida Constitution. The Legislature's primary intent was to create a backup system to handle those cases in which a public defender has a conflict and to do so in a fiscally sound manner in accordance with constitutional principles of due process. Because the OCCCRC do not supplant or otherwise compete with the public defender, the five regional counsel are not subject to the qualifications for public defenders set forth in article V, section 18. Furthermore, we defer to the Legislature in cases involving the constitutionality of laws and weigh any doubt as to a law's validity in favor of constitutionality. For these reasons, we reverse the trial court's order and hold that the Act does not violate the constitution by allowing for the appointment and confirmation of the five regional counsel.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] After the trial court granted the petition, the Governor appealed to the First District Court of Appeal, which certified the order as one requiring immediate resolution by this Court. We accepted jurisdiction. See art. V, § 3(b)(5), Fla. Const.
[2] The Act also provides that the OCCCRC have primary responsibility for representing indigent persons in civil proceedings, for which constitutional principles or general law require court-appointed counsel and where general law does not already provide for the appointment of the public defender. See § 27.511(6)(a), Fla. Stat. The civil proceedings include: section 393.12 (proceedings to appoint a guardian based on mental capacity), chapter 39 (proceedings relating to children, such as abuse, protective investigations, termination of parental rights proceedings, guardian ad litem proceedings), chapter 390 (termination of pregnancy proceedings), chapter 392 (tuberculosis control proceedings), chapter 397 (voluntary and involuntary substance abuse proceedings), chapter 415 (adult protective services proceedings), chapter 743 (disability of nonage of minor proceedings), chapter 744 (guardianship proceedings), and chapter 984 (proceedings concerning children and families in need of services). See id.
[3] Quo warranto is "[a] common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed." Black's Law Dictionary 1285 (8th ed.2004). It is the proper vehicle to challenge the "power and authority" of a constitutional officer, such as the Governor. Austin v. State ex rel. Christian, 310 So.2d 289, 290 (Fla.1975).
[4] The trial court concluded that FACDL had standing. See Chiles v. Phelps, 714 So.2d 453, 456 (Fla. 1998) (holding that members of the public have standing to enforce a public right). Further, the court found that quo warranto was the proper remedy because FACDL sought to enforce the right to have state officials perform their duties in conformity with the constitution. The Governor has not challenged FACDL's standing in this proceeding or the trial court's determination that quo warranto was a proper vehicle for relief.
[5] The substantive requirements contained within section 18 are relatively similar to those adopted by the Legislature when it originally created the Office of the Public Defender in 1963. As first enacted in 1963, section 27.50 provided in pertinent part:

There shall be a public defender, who shall be a member of the Florida bar in good standing, for each of the judicial circuits. The public defender shall be elected at the general election by the qualified electors of their respective judicial circuits as other state officials are elected and shall serve for a term of four (4) years.
Ch. 63-409, § 1, Laws of Fla.
[6] The Act created, amended, and repealed multiple sections of the Florida Statutes, including provisions in chapters 27, 28, 29, 43, 57, 110, 125, 216, 744, and 938. However, most of the revisions simply incorporated the OCCCRC into provisions relating to the court-appointed counsel system, including funding, administrative support, and operation of the offices.
[7] The major change in the registry system of private counsel was the Legislature's decision to repeal section 27.42, Florida Statutes (2006), which provided for an Indigent Services Committee in each circuit that managed the appointment of private counsel in these cases. Under the Act, the registry is now compiled and maintained by the chief judge of each circuit and the clerk of the court of each county. See § 27.40(3), Fla. Stat. (2007). Further, the Justice Administration Commission is tasked with tracking the cases in which private counsel are appointed and submitting quarterly and annual reports to the Governor, the Chief Justice of the Supreme Court, the President of the Senate, and the Speaker of the House of Representatives. See § 27.405, Fla. Stat. (2007).
[8] Although the OCCCRC are responsible for the same types of enumerated cases as the public defender, the Act also grants the OCCCRC primary responsibility for certain civil proceedings that are not addressed in section 27.51. As noted in section 27.511(6), the OCCCRC

ha[ve] primary responsibility for representing persons entitled to court-appointed counsel under the Federal or State Constitution or as authorized by general law in civil proceedings, including, but not limited to, proceedings under s. 393.12 and chapters 39, 390, 392, 397, 415, 743, 744, and 984.
Id. § 27.511(6)(a). However, if general law already provides for appointment of the public defender, then the OCCCRC are appointed only if the public defender has a conflict of interest. See id. at § 27.511(6)(b), Fla. Stat. Thus, even in the civil proceedings for which the OCCCRC must be appointed first, the Act precludes competition by maintaining the public defender's primary responsibility for handling civil cases already authorized under general law. Furthermore, in the context of civil cases, there is no argument that the Legislature has created a second-tier "appointed" public defender system in violation of the Constitution.
[9] Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, see Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and under article I, section 16 of the Florida Constitution. In addition, "the right to effective assistance of counsel encompasses the right to representation free from actual conflict." Hunter v. State, 817 So.2d 786, 791 (Fla.2002).