# Supreme Court of Florida

_____

No. SC15-1249
_____

**FLORIDA DEPARTMENT OF REVENUE, et al.,**
Appellants,

vs.

**DIRECTV, INC., etc., et al.,**
Appellees.

[April 13, 2017]

QUINCE, J.

This case is before the Court on appeal from the decision of the First District Court of Appeal in DIRECTV, Inc. v. State, Department of Revenue, 40 Fla. L. Weekly D1375 (Fla. 1st DCA June 11, 2015), where the district court expressly declared a state statute invalid. We have jurisdiction to review the decision. See art. V, § 3(b)(1), Fla. Const. Because we find that the statute involved does not violate the dormant Commerce Clause, we reverse the decision of the First District.

## FACTS AND PROCEDURAL HISTORY

In 2005, DIRECTV, Inc. and Echostar, L.L.C. (the satellite companies) filed suit in the trial court, "seeking a declaratory judgment holding the sales tax

provision in the [Communications Services Tax] unconstitutional, a permanent injunction against the enforcement of the provision, and a refund of the taxes paid pursuant to the provision." DIRECTV, Inc., 40 Fla. L. Weekly at D1375. Enacted in 2001, the Communications Services Tax (CST) imposed a 6.8 percent tax rate on cable service and a 10.8 percent tax rate on satellite service. § 202.12(1), Fla. Stat. (2005). Presently, cable service is taxed at 4.92 percent and satellite is taxed at 9.07 percent. § 202.12(1), Fla. Stat. (2015). It is this difference, according to the satellite companies, that violates the dormant Commerce Clause. The trial court disagreed, and "[i]n ruling on cross-motions for summary judgment," found that section 202.12(1), Florida Statutes, does not violate the Commerce Clause "because it does not benefit in-state economic interests or similarly situated entities." Id.

The satellite companies appealed the decision to the First District, arguing that the statute unconstitutionally discriminates against interstate commerce in both its effect and purpose. Id. The First District agreed with the satellite companies and reversed the decision of the trial court. Id. at D1378-79. The district court noted that satellite companies and cable companies were similarly situated because they both "operate in the same market and are direct competitors within that market." Id. at D1376. Moreover, the district court found cable companies to be in-state interests due to their local infrastructure and local employment. Id. at

D1377. The district court held that "because the CST favors communications that use local infrastructure, it has a discriminatory effect on interstate commerce." Id. However, the court did not find that the statute was discriminatory in its purpose. Id. at D1378-79.

Now before this Court, Appellants Florida Department of Revenue and the Florida Cable Telecommunications Association, Inc. (FCTA) argue that section 202.12(1) of the CST does not discriminate in its effect or its purpose and the satellite companies are not entitled to a refund for the taxes paid. This Court reviews decisions evaluating a statute's constitutionality de novo. Fla. Dept. of Revenue v. City of Gainesville, 918 So. 2d 250, 256 (Fla. 2005). All statutes come "clothed in a presumption of constitutionality," and this Court will invalidate a statute only if a challenger has shown its invalidity "beyond reasonable doubt." Crist v. Fla. Ass'n of Criminal Def. Lawyers, Inc., 978 So. 2d 134, 139 (Fla. 2008).

**ANALYSIS**

The statute at issue in this case, section 202.12(1) of the Communications Services Tax Simplification Law, states in relevant part:

> The Legislature finds that every person who engages in the business of selling communications services at retail in this state is exercising a taxable privilege. It is the intent of the Legislature that the tax imposed by chapter 203 be administered as provided in this chapter.
>
> (1) For the exercise of such privilege, a tax is levied on each taxable transaction, and the tax is due and payable as follows:

(a) Except as otherwise provided in this subsection, at a rate of 6.8 percent applied to the sales price of the communications service which:

1. Originates and terminates in this state, or

2. Originates or terminates in this state and is charged to a service address in this state,

when sold at retail, computed on each taxable sale for the purpose of remitting the tax due. . . .

. . . .

(c) At the rate of 10.8 percent on the retail sales price of any direct-to-home satellite service received in this state.

§ 202.12(1), Fla. Stat. (2005). The satellite companies contend that section 202.12(1) is facially unconstitutional. They argue that the text of the statute shows it was enacted with a discriminatory purpose and has a discriminatory effect, which violates the dormant Commerce Clause. "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).

## Commerce Clause

The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States." Article I, § 8, cl. 3, U.S. Const. The Supreme Court recognizes, in addition to the text's affirmative grant of authority, a further, negative command, known as the dormant Commerce Clause.

This clause prohibits certain state taxation even when Congress has failed to legislate on the subject. Okla. Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179 (1995). A state tax is permissible under the dormant Commerce Clause only if it "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279 (1977). The satellite companies' challenge to the CST is limited to the third prong, namely the prohibition on discrimination against interstate commerce.

"[S]tatutes that openly discriminate against out-of-state economic interests in order to protect in-state interests are subject to a per se rule of invalidity." Simmons v. State, 944 So. 2d 317, 330 (Fla. 2006). A statute can discriminate against out-of-state interests in one of three ways: (1) it may be facially discriminatory; (2) it may discriminate in its practical effect; or (3) it may have a discriminatory intent. Amerada Hess Corp. v. Dir., Div. of Taxation, 490 U.S. 66, 75 (1989). In this case, the satellite companies argue that the sales tax portion of the CST discriminates in its effect and purpose.

### I. Discriminatory Effect

A state law is discriminatory in effect if it affects similarly situated entities in a market by imposing disproportionate burdens on out-of-state interests and

conferring advantages upon in-state interests.  Or. Waste Sys., Inc. v. Dep't of

Envtl. Quality, 511 U.S. 93, 99 (1994).  Appellants argue Appellees'

discriminatory effect argument fails at the threshold level.  According to

Appellants, this Court does not need to examine whether the tax imposes

disproportionate burdens because satellite and cable companies are not similarly

situated.

Substantially Similar Entities

Appellant Department of Revenue argues that cable companies and satellite

companies are not similarly situated entities.  "[A]ny notion of discrimination

assumes a comparison of substantially similar entities."  Gen. Motors Corp. v.

Tracy, 519 U.S. 278, 298 (1997) (footnote omitted).  If the differences between the

two companies render the entities not substantially similar, the Commerce Clause

is not implicated.  See id.  Appellant contends that cable and satellite providers

offer different communications services using different technologies and are

subject to different regulatory burdens.  In response, Appellees argue that cable

and satellite providers compete directly and offer virtually identical products, and

consumers view their products as similar and substitutable.

What is required for entities to be considered "substantially similar" has not

been extensively considered by the courts.  See Gen. Motors Corp., 519 U.S. at

299 ("[The] central assumption [of substantially similar entities] has more often

than not itself remained dormant in this Court's opinions on state discrimination subject to review under the dormant Commerce Clause . . . ."). It appears that at the very least, the entities must be in competition with one another. "[I]n the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference . . . to which the dormant Commerce Clause may apply." Id. at 300; see also Alaska v. Arctic Maid, 366 U.S. 199, 204 (1961) (refusing to compare freezer-ship owners and local fish processors because "[t]he freezer ships do not compete with those who freeze fish for the retail market").

We find that cable and satellite providers are similarly situated because they both provide television service and compete directly in the pay-television market for the same customers. Appellant notes that cable offers Internet and phone service and satellite does not. While true, both satellite and cable offer television programming and compete for customers in that market. Appellees' expert offered uncontroverted testimony that cable and satellite TV "are economic substitutes," such that an increase in the cost of one "will cause consumers, on net, to shift" to the other—i.e., that consumers see the services as fungible. Moreover, Appellant FCTA's president acknowledged in depositions that satellite is cable's direct competitor, "an alternative provider of multichannel video and another means for customers to get that particular product."

Appellant also states that cable is heavily regulated by the federal government and satellite is not. However, one may argue that because cable predates satellite by decades, Congress may have decided to limit federal regulation on what was a burgeoning industry in order to allow it to compete with cable. See, e.g., DISH Network Corp. v. F.C.C., 653 F.3d 771, 774 (9th Cir. Ct. 2011) (noting Congress passed the Satellite Home Viewer Improvement Act of 1999 "to better enable competition between satellite TV and cable TV"). The Florida Legislature also appears to view cable and satellite as competitors. In enacting the CST, the Legislature declared that it wanted to provide a "uniform method for taxing communications services sold in the state" in order to "free consumers to choose a provider based on tax-neutral considerations" and "spur[] new competition by simplifying an extremely complicated state and local tax and fee system." § 202.105(1), Fla. Stat. (2001).

Although Appellant argues that cable and satellite are not similarly situated because cable offers services that satellite does not and cable is regulated more heavily, they both compete in the same market for the same customers. Accordingly, we consider satellite and cable to be similarly situated for the purpose of the dormant Commerce Clause.

## In-State Interests

Appellants Department of Revenue and FCTA both argue that cable is not an in-state interest. The Supreme Court has identified "in-state" and "out-of-state" businesses based on a distinct geographic connection, or lack thereof, to the home state. See American Trucking Ass'ns v. Scheiner, 483 U.S. 266, 286 (1987) ("[A] state tax that favors in-state business over out-of-state business for no other reason than the location of its business is prohibited by the Commerce Clause."); see also Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 28 (1980) (striking down a Florida statute prohibiting banks "with principal operations outside Florida" from operating investment subsidiaries or giving investment advice within the state). Appellants argue that cable and satellite companies are both out-of-state interests because they each have corporate headquarters and principal places of business located outside of Florida. Additionally, they each have employees and property in Florida and elsewhere that facilitate the provision of their services to customers. Appellees counter that cable companies are in-state interests because they employ more Florida residents and utilize local infrastructure to produce and distribute their programming.

Cable companies are not in-state interests for the purpose of the dormant Commerce Clause. Instead, we find that both businesses are interstate in nature. Florida's largest cable companies, Comcast Corporation, Coxcom, Inc., Cox

Communications Gulf Coast, LLC, and Bright House Networks, LLC, have their headquarters in Pennsylvania, Georgia, Georgia, and New York, respectively. Florida's largest satellite provider, DIRECTV, has its headquarters in California. Florida's second largest satellite provider, DISH, has its headquarters in Colorado. The cable and satellite companies have employees and property both inside and outside of Florida to facilitate their operations and earn income. They both employ Florida residents to sell, maintain, or repair their service to Florida customers. They also own and lease a significant amount of property in Florida.

Neither cable nor satellite "produce" anything in Florida. Instead, they are service providers that acquire video content from national and regional networks and local broadcasters and distribute that video content to their customers in Florida. To do this, they both employ the use of ground infrastructure. Cable uses headends to aggregate video content from the national and regional networks and process it for further downstream transmission to Florida customers. Satellite uses local collection facilities to receive off-air video content from local broadcast stations, encode the content, and prepare it for long-haul transmission back to their satellite uplink facilities outside of Florida. This local off-air video content is then transmitted over ground, using leased capacity on fiber or coaxial networks owned by telecommunications companies in Florida.

Cable is not a local, in-state interest any more than satellite.  While it may be true that cable employs more Florida residents and uses more local infrastructure to provide its services, the Supreme Court has never found a company to be an in-state interest because it had a greater presence in a state.  Instead, the Supreme Court has affirmed the prerogative of state and local governments to treat different business models differently.  See Amerada Hess, 490 U.S. 66; Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456 (1981); Exxon Corp. v. Governor of Md., 437 U.S. 117 (1978).  According to these cases, a state may treat "two categories of companies" differently so long as the discrimination is based on "differences between the nature of their businesses" and not "the location of their activities." Amerada Hess, 490 U.S. at 78.  Here, the difference between cable and satellite is not that one is located or primarily operates "in-state" and the other "out-of-state." Instead, it is that their different business models have a different impact on local communities.  While cable's business model requires the employment of more people and the use of more infrastructure, it is not a local business.  Neither cable nor satellite is produced in Florida, and neither business is headquartered in the state.

For these reasons, we do not consider cable an in-state interest for the purpose of the dormant Commerce Clause.  Because we find that cable is not an in-state interest, the satellite companies' discriminatory effect argument fails.  To

date, every state and federal court considering Commerce Clause challenges brought by the satellite industry arguing against state tax measures as favoring the cable industry has held that these taxes do not violate the dormant Commerce Clause. They have found either that cable and satellite are not similarly situated[1] or that cable is not an in-state interest.[2] We agree with those decisions that find cable is not an in-state interest.

## II. Discriminatory Purpose

A state law may also violate the dormant Commerce Clause if it has a discriminatory purpose. See Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 352-53 (1977). To determine discriminatory purpose, courts look to the language and the legislative history of the statute in question. See Bacchus

---

1. DIRECTV, Inc. v. Treesh, 487 F.3d 471, 480 (6th Cir. 2007) (finding that cable and satellite "are distinct, consisting of two very different means of delivering broadcasts"); DIRECTV, LLC v. Dep't of Revenue, 25 N.E.3d 258, 266-71 (Mass. 2012) (concluding that cable and satellite are not substantially similar for Commerce Clause purposes); DIRECTV, Inc. v. Roberts, 477 S.W.3d 293, 307 (Tenn. Ct. App. 2015) (determining that cable and satellite providers are not "substantially similar entities for purposes of the Commerce Clause").

2. DIRECTV, Inc. v. State, 632 S.E.2d 543, 548 (N.C. Ct. App. 2006) (holding that cable providers are not "local" as compared to satellite providers); DIRECTV Inc. v. Levin, 941 N.E.2d 1187, 1196 (Ohio 2010) (explaining that "the cable industry is not a local interest benefited at the expense of out-of-state competitors"), cert. denied, DIRECTV Inc. v. Testa, 133 S. Ct. 51 (2012); DIRECTV v. Utah State Tax Comm'n, 364 P.3d 1036, 1046-47 (Utah 2015) (finding that cable providers are not "in-state" and satellite providers are not "out-of-state" for Commerce Clause purposes).

Imports, Ltd. v. Dias, 468 U.S. 263, 270-72 (1984).  Appellees argue that affidavits from lobbyists and two former legislators, which stated that the cable lobbyists sought a differential tax rate for cable and satellite because satellite was beginning to take over market share, demonstrate that the Legislature acted with a discriminatory purpose.  Moreover, they claim that the Supreme Court has made clear that courts can and must consult a broad range of evidence—including statements by proponents and sponsors of suspect legislation—to unmask the true purpose for an alleged discriminatory enactment.

A general rule of statutory construction is that "legislative intent is determined from the statute's text."  Heart of Adoptions, Inc, v. J.A., 963 So. 2d 189, 198 (Fla. 2007).  In this case, section 202.105, Florida Statutes, provides the legislative intent of the CST:

> (1) It is declared to be a specific legislative finding that the creation of this chapter fulfills important state interests by reforming the tax laws to provide a fair, efficient, and uniform method for taxing communications services sold in this state.  This chapter is essential to the continued economic vitality of this increasingly important industry because it restructures state and local taxes and fees to account for the impact of federal legislation, industry deregulation, and the convergence of service offerings that is now taking place among providers.  This chapter promotes the increased competition that accompanies deregulation by embracing a competitively neutral tax policy that will free consumers to choose a provider based on tax-neutral considerations.  This chapter further spurs new competition by simplifying an extremely complicated state and local tax and fee system.  Simplification will lower the cost of collecting taxes and fees, increase service availability, and place downward pressure on price.  Newfound administrative efficiency is demonstrated by a

reduction in the number of returns that a provider must file each month. By restructuring separate taxes and fees into a revenue-neutral communications services tax centrally administered by the department, this chapter will ensure that the growth of the industry is unimpaired by excessive governmental regulation. The tax imposed pursuant to this chapter is a replacement for taxes and fees previously imposed and is not a new tax. The taxes imposed and administered pursuant to this chapter are of general application and are imposed in a uniform, consistent, and nondiscriminatory manner.

§ 202.105, Fla. Stat. (2001). There is no evidence from the text of the statute that it was enacted with a discriminatory purpose. As noted by the First District, an examination of the 2000 Senate and House Journals reveals that there was no intent to favor cable companies. DIRECTV, Inc., 40 Fla. L. Weekly at D1378. Moreover, the 2000 Senate Staff Analysis and Economic Impact Statement shows that analysts believed the CST's impact would have the benefit of a simplified tax structure for all communication providers. Id.

Appellees argue that courts can and must consider other forms of evidence, such as the affidavits presented in this case. However, the Supreme Court has held that legislative history is far more problematic when sources outside of the Legislature are consulted, or when courts "speculate upon the significance of the fact that a certain interest group sponsored or opposed particular legislation." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 120 (2001); see also Kelly v. Robinson, 479 U.S. 36, 51 n.13 (1986) ("[N]one of those statements was made by

a Member of Congress, nor were they included in the official Senate and House Reports. We decline to accord any significance to those statements.").

Therefore, we do not find that the CST was enacted with a discriminatory purpose. Because the CST is not discriminatory in either its purpose or effect, the satellite companies' facial challenge fails. Consequently, Appellees are not entitled to a refund of the taxes paid pursuant to the statute.

## CONCLUSION

For the reasons set forth above, we reverse the First District's decision holding that the statute is invalid. Section 202.12(1) is not discriminatory in either its purpose or its effect and therefore does not violate the dormant Commerce Clause.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and CANADY, JJ., concur.
POLSTON, J., concurs in result.
LAWSON, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the District Court of Appeal – Statutory or Constitutional Invalidity

First District - Case Nos. 1D13-5444 & 1D14-292

(Leon County)

Pamela Jo Bondi, Attorney General, J. Clifton Cox, Special Counsel, and Rachel Nordby and Jonathan L. Williams, Deputy Solicitors General, Tallahassee, Florida,

for Appellant Florida Department of Revenue

Eric S. Tresh, Amelia Toy Rudolph, and Zachary T. Atkins of Eversheds Sutherland (US) LLP, Atlanta, Georgia; David A. Konuch, Tallahassee, Florida; and Walter Hellerstein, Athens, Georgia,

for Appellant Florida Cable Telecommunications Association, Inc.

Katherine E. Giddings and Kristen M. Fiore of Akerman LLP, Tallahassee, Florida; Peter O. Larsen and Timothy J. McDermott of Akerman LLP, Jacksonville, Florida; E. Joshua Rosenkranz, Jeremy N. Kudon, and Nicholas G. Green of Orrick, Herrington & Sutcliffe LLP, New York, New York; and Eric A. Shumsky of Orrick, Herrington & Sutcliffe LLP, Washington, District of Columbia,

for Appellees

Gigi Rollini of Messer Caparello, P.A., Tallahassee, Florida,

for Amicus Curiae Public Knowledge

John S. Mills, Courtney R. Brewer, and Andrew D. Manko of The Mills Firm, P.A., Tallahassee, Florida,

for Amicus Curiae Satellite Broadcasting and Communications Association

John A. Hinman of Hinman Carmichael LLP, San Francisco, California; and Christine Davis Graves of Carlton Fields Jorden Burt, P.A., Tallahassee, Florida,

for Amicus Curiae National Association of Wine Retailers