823 So.2d 86 (2002)
Henry W. COOK, etc., Petitioner,
v.
CITY OF JACKSONVILLE, et al., Respondents.
Karleen F. DeBlaker, etc., et al., Petitioners,
v.
Eight is Enough in Pinellas, etc., Respondent.
Nos. SC00-1745, SC00-1908.
Supreme Court of Florida.
May 23, 2002.
Rehearing Denied July 18, 2002.
*87 Raymond Ehrlich and Scott D. Makar of Holland & Knight, LLP, and Richard G. Rumrell and Lindsey C. Brock, III of Rumrell, Wagner & Costabel, LLP, Jacksonville, FL, for Petitioner in No. SC00-1745.
Richard A. Mullaney, General Counsel, and Loree L. French, Assistant General Counsel, Jacksonville, FL, for Respondents in SC00-1745.
Thomas E. Warner, Solicitor General, and T. Kent Wetherell, II, Deputy Solicitor General, Tallahassee, FL, on behalf of Robert A. Butterworth, Attorney General, and the State of Florida, Amicus Curiae.
Sarah Richardson, Senior Assistant County Attorney, Clearwater, FL, for Petitioners in SC00-1908.
Michael S. Hooker and Guy P. McConnell of Glenn, Rasmussen, Fogarty & Hooker, P.A., Tampa, FL, for Respondent in SC00-1908.
WELLS, C.J.
We have for review City of Jacksonville v. Cook, 765 So.2d 289 (Fla. 1st DCA 2000), and Pinellas County v. Eight is Enough in Pinellas, 775 So.2d 317 (Fla. 2d DCA 2000), decisions of district courts of appeal that affect a class of state or constitutional officers. We have jurisdiction over both cases pursuant to article V, section 3(b)(3), Florida Constitution, and have consolidated them for argument and decisional purposes. We quash both Cook and Eight is Enough.[1]

COOK v. CITY OF JACKSONVILLE
In the 1992 general election, the voters in Duval County voted on several amendments to the Charter of the Consolidated City of Jacksonville (Jacksonville Charter) seeking to impose a two-term limitation on the sheriff, supervisor of elections, property appraiser, tax collector, clerk of the circuit court, members of the Duval County School Board, and members of the Civil Service Board. There were separate votes on each section of a proposed ordinance amending the Jacksonville Charter. The voters approved the ordinance as it related to the clerk of the circuit court.[2] As *88 adopted, section 12.11 of the Jacksonville Charter provides:
Section 12.11. Two term limit.No person elected and qualified for two consecutive full terms as Clerk of the Court shall be eligible for election as Clerk of the Court for the next succeeding term. The two-term limitation shall apply to any full term which began in 1992 or thereafter.
Petitioner Henry W. Cook was appointed clerk of the circuit and county courts for Duval County in 1988 (Jacksonville Clerk). Cook was subsequently elected in 1988 and reelected in 1992 and 1996. On November 2, 1998, Cook presented to the Duval County Supervisor of Elections (Jacksonville Supervisor), Cook's "Statement of Candidate" papers indicating his intent to seek reelection as the Jacksonville Clerk. The Jacksonville Supervisor refused to accept the completed papers on account of section 12.11 of the Jacksonville Charter. On November 4, 1998, Cook, in his individual capacity, sued the City of Jacksonville and the Jacksonville Supervisor, seeking a declaratory judgment invalidating section 12.11 of the Jacksonville Charter and a writ of mandamus directing the Jacksonville Supervisor to accept Cook's candidacy papers.
The trial court ruled that section 12.11 was an attempt to impose additional qualifications or disqualifications on the Jacksonville Clerk. The trial court found nothing in article VIII, section 1(d), Florida Constitution, that authorized the City to impose additional qualifications or disqualifications. Additionally, the trial court ruled that the only disqualifications for the clerk's job were contained in article VI, section 4, Florida Constitution. Accordingly, the trial court held that section 12.11 added an unconstitutional additional qualification or disqualification. Accordingly, the trial court granted mandamus and ordered the Jacksonville Supervisor to accept Cook's candidacy papers.
The First District reversed. See Cook, 765 So.2d at 293. The court acknowledged our decision in Thomas v. State ex rel. Cobb, 58 So.2d 173 (Fla.1952), construing it to hold that a statute which imposed additional qualifications is unconstitutional where the constitution has already set forth the qualifications. See Cook, 765 So.2d at 292. But the First District reasoned that our later cases of State ex rel. Askew v. Thomas, 293 So.2d 40 (Fla.1974), and State v. Grassi, 532 So.2d 1055 (Fla. 1988), established that where the constitution establishes no qualifications, the Legislature may impose additional qualifications. See Cook, 765 So.2d at 292. The First District concluded that neither article VIII, section 1(d), nor article V, section 16, Florida Constitution, provided specific qualifications for the clerk of the circuit court. See id. at 293. Because no qualifications were established for the clerk of the circuit court in the constitution and because Jacksonville's home rule powers authorized it to establish a government framework within its territorial boundaries, the First District held that the two-term limit was constitutional. See id. at 293.[3] The court did not address whether the term limit provision imposed an additional unconstitutional disqualification. Cook petitioned this Court for review.

DeBLAKER v. EIGHT IS ENOUGH IN PINELLAS
Pinellas is a charter county whose charter was initially proposed by special law, see ch. 80-590, Laws of Fla., and ratified *89 by the Pinellas electorate. Pursuant to the amendatory provisions of the Pinellas County Charter (Pinellas Charter), Eight is Enough in Pinellas (Committee), a political committee, initiated a petition drive to amend the Pinellas Charter. The goal of the initiative was to impose term limits on members of the board of county commissioners, the sheriff, tax collector, property appraiser, supervisor of elections, and clerk of the circuit court. With one vote applicable to all positions, the Pinellas County electorate adopted the term limit amendment in the 1996 general election. The amended provision of the Pinellas Charter relating to county officers provides:
Sec. 4.03. County officers.
This document [Charter] shall in no manner change the status, duties, or responsibilities of the [following] county officers of Pinellas County: The clerk of the circuit court, property appraiser, tax collector, sheriff, and supervisor of elections except that no person may appear on the ballot for re-election to the office of clerk of the court, property appraiser, tax collector, sheriff, or supervisor of elections if, by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for eight consecutive years.

(Emphasis represents language added as a result of 1996 ratification vote.)
Clair Johnson, a resident and registered voter of Pinellas County, sued Pinellas County prior to the ratification election, seeking a declaratory judgment that the then charter proposal was invalid and an injunction prohibiting the proposal from being placed on the ballot. The Committee and its chairman intervened. The trial court denied Johnson's motion for summary judgment and motion for temporary and permanent injunction on September 6, 1996, finding that the proposed amendment was not contrary to the Florida Constitution and that the ballot language did not violate section 101.161, Florida Statutes (1995). The trial court further found that the disqualifications enumerated in article VI, section 4, Florida Constitution, did not prohibit charter counties from imposing term limits within their counties. Finally, the trial court found within the constitutional grant of home rule authority provided to charter counties by article VIII, section 1(g), the authorization for a charter county to impose term limits on its county officers and board of county commissioners.
Soon after the trial court so ruled, Fred Petty, as tax collector, Karleen DeBlaker, as the clerk of the circuit court, Everett Rice, as sheriff, Jim Smith, as property appraiser, and Dorothy Ruggles, as supervisor of elections, intervened as plaintiffs. After further proceedings in the trial court, the trial court issued an amended order and final judgment on January 26, 1999. In that order the trial court ratified its September 6, 1996, order. The trial court further held that the Pinellas Charter conferred plenary power on Pinellas County, subject to the constraints of the charter and that nothing in the Pinellas Charter required submission of charter amendments to the Legislature for its approval.
The board of county commissioners for Pinellas County, clerk of the circuit court, tax collector, sheriff, supervisor of elections, property appraiser, and Johnson appealed the amended order to the Second District. The Second District affirmed. See Eight is Enough, 775 So.2d at 320. The court rejected the argument that in passing the special law which became the Pinellas Charter, the Legislature reserved to itself the sole authority to propose charter amendments. See id. The court also *90 rejected the argument that charter provisions prohibited the term limit amendment. See id. at 319-20. Further, the court found that term limits did not affect the "status, duties, or responsibilities" of the county officers, and that a term limit amendment did not affect the "composition, election, term of office and compensation of [county commission] members." See id. The Second District found no statutes or constitutional provisions prohibiting a charter county from imposing term limits. See id. The court did not address whether the term limit provision imposed an additional disqualification from office.
DeBlaker, as clerk of the circuit court, Petty, as tax collector, and Rice, as sheriff, petitioned for review. During the pendency of our review, Diane Nelson succeeded Petty as tax collector, and we granted her leave to withdraw. The board of county commissioners did not petition for review.

ANALYSIS
The issue we address in these consolidated cases is whether a charter county may in its charter impose a "term limit" provision upon those county officer positions which are authorized by article VIII, section 1(d), Florida Constitution, where the charter county through its charter has not abolished those county officer positions.[4] The disposition of these consolidated cases requires us to determine whether a term limit provision is a disqualification from office and, if so, whether the Florida Constitution prohibits a charter county from imposing a term limit provision upon such a county officer. We hold that a term limit provision is a disqualification from election to office and that article VI, section 4(a), Florida Constitution, provides the exclusive roster of those disqualifications which may be permissibly imposed. We also hold that article VI, section 4(b), Florida Constitution, provides those positions authorized by the constitution upon which a term limit provision may be permissibly imposed.
The county offices subject to this review are authorized by article VIII, section 1(d), Florida Constitution, which states:
COUNTY OFFICERS. There shall be elected by the electors of each county, for terms of four years, a sheriff, a tax collector, a property appraiser, a supervisor of elections, and a clerk of the circuit court; except, when provided by county charter or special law approved by vote of the electors of the county, any county officer may be chosen in another manner therein specified, or any county office may be abolished when all the duties of the office prescribed by general law are transferred to another office. When not otherwise provided by county charter or special law approved by vote of the electors, the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds.
Importantly, the Pinellas Charter[5] has not abolished the county officer positions, and the Jacksonville Charter[6] has not abolished *91 the office of clerk of circuit court position.[7] Thus, we do not address the validity of a term limit provision upon an office authorized in a county charter but not expressly authorized in the Florida Constitution.
We decide the issue presented by these cases consistent with our decision in Thomas v. State ex rel. Cobb, 58 So.2d 173 (Fla.1952). At issue in Cobb was a statute purporting to require a candidate for the office of county superintendent of public instruction, which office was established in the 1885 Constitution by article VIII, section 6, to hold a Florida graduate teaching certificate.[8] We framed the issue as:
Has the Legislature under our present Constitution the power to prescribe the qualifications for the constitutional office of County Superintendent of Public Instruction?
State ex rel. Cobb, 58 So.2d at 175. We answered this question in the negative and found that the Legislature was prohibited from adding to or taking from the qualifications or disqualifications of this constitutionally authorized office. See id. at 183. In so holding, we stated:
Our State Constitution, as we have pointed out, prescribes in no uncertain terms that certain persons are disqualified to hold certain constitutional offices, such as, Governor, Members of the Legislature, Justices of the Supreme Court, Judges of the Circuit and Criminal Courts. As to all officers the Constitution further excludes from office all persons "convicted of bribery, perjury, larceny or of infamous crime, or who shall make, or become directly or indirectly interested in, any bet or wager, the result of which shall depend upon any election; or that shall hereafter fight a duel or send or accept a challenge to fight, or that shall be second to either party, or that shall be the bearer of such challenge or acceptance; but the legal disability shall not accrue until after trial and conviction by due form of law." This solemn declaration in our Constitution about qualifications or disqualifications to hold public office are conclusive of the whole matter whether in the affirmative or in the negative form.

These plain and unambiguous specifications of disabilities exclude all others unless the Constitution provides otherwise. *92 The effect of this declaration in the Constitution that certain officers are not qualified carries with it the necessary implication that all others are qualified.

State ex rel. Cobb, 58 So.2d at 183 (emphasis added).
Article VI, section 4, Florida Constitution, sets forth the "disqualifications" for offices authorized by the constitution:[9]
(a) No person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability.
(b) No person may appear on the ballot for re-election to any of the following offices:
(1) Florida representative,
(2) Florida senator,
(3) Florida Lieutenant governor,
(4) any office of the Florida cabinet,
(5) U.S. Representative from Florida, or
(6) U.S. Senator from Florida.
if, by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for eight consecutive years.
We have previously indicated in our advisory opinion concerning the then proposed article VI, section 4(b), which was before us through the initiative process prior to ballot placement and approval by the voters, that a term limit provision is a disqualification. See Advisory Opinion to the Attorney GeneralLimited Political Terms in Certain Elective Offices, 592 So.2d 225, 228 (Fla.1991). In Advisory Opinion, we stated:
We do not agree with opponents that the proposed amendment fails to identify constitutional provisions with which it conflicts or which it substantially affects. The initiative proposal is intended to amend article VI, section 4 of the state constitution, which provides that "[n]o person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability." The amendment, if passed, will add term limits as a further disqualification on holding office.

Id. at 227-28 (emphasis added).[10] Consistent with Advisory Opinion, we hold that a term limit provision is a disqualification from election to office.
Respondent Committee and the Solicitor General maintain that this Court in Holley v. Adams, 238 So.2d 401 (Fla.1970), rejected the proposition that article VI, section 4, "preempted the field" with regard to disqualifications. We disagree and hold that article VI, section 4, Florida Constitution, *93 imposes those disqualifications which may be validly imposed upon offices authorized by the Constitution.
Holley involved a challenge to chapter 70-80, Laws of Florida, popularly known as the "resign to run" law. Holley, 238 So.2d at 403. That law required a circuit judge who desired to seek the then elected office of supreme court justice to resign the office of circuit judge prior to qualifying to run for supreme court justice. See id.[11] While Chief Justice Ervin would have found the resign to run law to have unconstitutionally imposed an additional disqualification, see id. at 409 (Ervin, C.J., dissenting), the majority of this Court did not address that issue. Rather, this Court held that the decision in Cobb was distinguishable because, unlike in Cobb, the law under scrutiny (i.e., resign to run) was not "a legislative determination that a person who currently holds the office of Circuit Judge is not fit to be a Supreme Court Justice." Id. at 405. We then stated:
The [resign to run] law is simply a limitation upon the right to retain the office already held when seeking another. It is not a limitation upon the right to seek another office, for the incumbent of an office has the choice under the statute to retain it unmolested or give it up and seek another.
... Ch. 70-80 does not prescribe qualification but relates to the eligibility of those who may become candidates.
Id. at 406 (citation omitted). Under the reasoning of Holley, the resign to run law is not a disqualification.
As noted above, article VI, section 4, Florida Constitution, provides the only disqualifications which may be imposed upon offices authorized by the constitution. Clearly, by virtue of article VI, section 4(b), the Florida Constitution contemplates that term limits may be permissibly imposed upon certain offices authorized by the constitution. By the constitution identifying the offices to which a term limit *94 disqualification applies, we find that it necessarily follows that the constitutionally authorized offices not included in article VI, section 4(b), may not have a term limit disqualification imposed. If these other constitutionally authorized offices are to be subject to a term limit disqualification, the Florida Constitution will have to be amended to include those offices.
We do not agree with the First District's reliance on Askew, see Cook, 765 So.2d at 291-92, or the Second District's reliance on a charter county's home rule powers. See Eight is Enough, 775 So.2d at 320. Before us in Askew was a quo warranto petition under the 1968 constitution, challenging the authority of an elected school board member to continue in office after she moved her residence from the area that she was elected to represent. See Askew, 293 So.2d at 41. A statute provided that a vacancy in office existed when a school board member moved his or her residence from the area he or she represented. See id. An issue in Askew was whether article IX, section 4(a), Florida Constitution, providing for school boards, set the qualifications for office for its members and, if so, whether the Legislature was without authority to impose any additional qualifications. See Askew, 293 So.2d at 42 (emphasis added). In resolving this issue, this Court first examined the specific constitutional provision at issue to determine whether it established qualifications for office. We held that if the Florida Constitution was silent as to the qualifications of an office authorized by the constitution then the Legislature may set statutory qualifications. See Askew, 293 So.2d at 42. We then found that the constitution was silent as to qualifications, and therefore the statutory qualifications under attack in Askew did not violate the constitutional principle against adding to constitutional qualifications. We do not agree with the First District that Askew supports the conclusion that term limits imposed upon county officers by a charter county are constitutional because term limits are a disqualification, not a qualification.
The Second District in Eight is Enough took a different analytical route to conclude that the term limit provision was permissible upon county officers. That court examined the broad authority granted to charter counties by article VIII, section 1(g), Florida Constitution. See 775 So.2d at 320. Because no general law existed that prohibited a county from imposing a term limit provision, the Second District concluded that a charter county was able to impose a term limit provision. See id. The Second District implicitly held that within the home rule powers of a charter county resided the authority to impose a term limit upon county officers authorized pursuant to article VIII, section 1(d), Florida Constitution. However, as we have indicated, neither Jacksonville nor Pinellas County has abolished the county officer positions authorized by article VIII, section 1(d). A county charter must comply with the Florida Constitution in respect to the disqualifications which pertain to these offices authorized by the constitution. See generally Hollywood, Inc. v. Broward County, 431 So.2d 606, 609 (Fla. 4th DCA 1983) (charter counties are constrained by United States and Florida Constitutions).
We reiterate what we said in Cobb:
The Constitution is the charter of our liberties. It cannot be changed, modified or amended by legislative or judicial fiat. It provides within itself the only method for its amendment.
58 So.2d at 174.

CONCLUSION
We find that article VI, section 4(a), Florida Constitution, provides the *95 only disqualifications applicable to the county offices established by article VIII, section 1(d), Florida Constitution. Thus, we hold that section 12.11, Jacksonville Charter, providing for a term limit on the clerk of the circuit court, and the 1996 amendment to section 4.03, Pinellas Charter, providing for a term limit on county officers authorized by article VIII, section 1(d), are invalid, as those provisions unconstitutionally attempt to impose an additional disqualification from election to office.
Accordingly, we quash the First District's decision in Cook and the Second District's decision in Eight is Enough. We remand the Eight is Enough case to the Second District for further proceedings not inconsistent with this decision.
It is so ordered.
HARDING, PARIENTE, and LEWIS, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which SHAW and QUINCE, JJ., concur.
ANSTEAD, J., dissenting.
I cannot agree with the majority that the Florida Constitution prohibits charter counties from enacting term limits for county officers. To the contrary, the constitution explicitly grants broad authority to charter counties over charter officers, and, consistent with that grant, imposes no restrictions on a county's authority to regulate those officers.
The threshold question before this Court is whether charter counties have the authority to enact citizen-initiative term limit amendments to their county charters. A separate issue is whether the Florida Constitution expressly prohibits term limits for county officers. The majority opinion glosses over the issue of charter county government authority and, in my view, jumps straight to a flawed analysis of constitutional preemption that directly conflicts with the broad powers granted to charter counties by the Florida Constitution.

HOME RULE AUTHORITY
First, article VIII, section 1(g) grants broad home-rule authority to charter counties:
CHARTER GOVERNMENT. Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances.
Article VIII, section 1(d) also expressly provides for county officers:
COUNTY OFFICERS. There shall be elected by the electors of each county, for terms of four years, a sheriff, a tax collector, a property appraiser, a supervisor of elections, and a clerk of the circuit court; except, when provided by county charter or special law approved by vote of the electors of the county, any county officer may be chosen in another manner therein specified, or any county office may be abolished when all the duties of the office prescribed by general law are transferred to another office. When not otherwise provided by county charter or special law approved by vote of the electors, the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds.
(Emphasis supplied.) The autonomy of local governments is at the heart of these *96 two sections of the Florida Constitution, and the two sections vest broad authority in charter counties regarding charter governments and county officers. This broad language was obviously intended to allow charter counties wide latitude in enacting regulations governing the selection and duties of county officers. For example, article VIII, section 1(d), specifies that county officers may be elected or chosen in some other manner, and that any county office may even be abolished. By these provisions, it is apparent that the framers intended for charter counties to be self-governing in both providing for county officers and in providing for the manner in which county officials will be selected. Additionally, article VIII, section (1)(g), specifies that charter counties exercise their powers in a way that is "not inconsistent with general law." The term limit provisions in the charters in these cases are not inconsistent with any provision of general law relating to elected county officers. Given this grant of broad authority and consistency with general law, I can find no legal justification for concluding that charter counties should not be allowed to ask their citizens to vote on eligibility requirements of local elected officials, including term limits, since they could abolish the offices completely or decide to select the officers in any manner of their choosing.

PROHIBITION ON TERM LIMITS FOR COUNTY OFFICES
I also disagree with the majority's position that article VI, section 4(b), which lists the state elected offices that have mandatory term limits, somehow operates to exclude charter counties from exercising their authority over county officers by imposing term limits. First, article VI, section 4(b) enumerates elected offices of statewide importance, a provision which has no bearing on local county officers. Second, there is no wording in article VI, section 4(b) (or anywhere else in the Florida Constitution or the Florida Statutes) that indicates that the named officers in article VI, section 4(b) are subject to term limits to the exclusion of all other government officers, state or local, in the State of Florida. If anything, article VI, section 4(b) provides a model and framework upon which charter counties may institute similar term limits for county officers, pursuant to the constitutional provision: "Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors." Art. VIII, § 1(g), Fla. Const. (emphasis added).
The majority also makes the distinction that article VI, section 4(b) is unique because it names the only constitutional "disqualifications" applicable to county offices in the Florida Constitution. I feel that the majority artificially puts an inordinate amount of emphasis on the word "disqualification." While term limits are eligibility requirements that may "disqualify" some incumbents, the same limits actually act to "qualify" others to hold office. Further, while we referred to term limits as a "disqualification" in Advisory Opinion to the Attorney GeneralLimited Political Terms in Certain Elective Offices, 592 So.2d 225, 227-28 (Fla.1991), the reference to term limits as a "disqualification" cannot logically be stretched to mean that the absence of a reference to county offices in article VI, section 4(b) precludes term limits from being enacted at the county level.
Accordingly, I would affirm the First District's decision in Cook and the Second District's decision in Eight is Enough.
SHAW and QUINCE, JJ., concur.
NOTES
[1] While the 2000 election has passed and no relief may be granted to Cook, we decline to dismiss the Cook case as moot in order to fully explain our decision in these two cases since the issue we address "is a matter of great importance and of general public interest and will probably recur" in future elections. Plante v. Smothers, 372 So.2d 933, 935 (Fla.1979).
[2] Each section of the ordinance was adopted, but the only section before us relates to the clerk's position.
[3] The First District also rejected Cook's argument that the Jacksonville Clerk was an article V officer. See Cook, 765 So.2d at 293. Because of our resolution of this case we do not address this issue.
[4] Article VIII, section 1(d), provides that "any county office may be abolished" by the county charter "when all the duties of the office prescribed by general law are transferred to another office."
[5] See Pinellas County Charter § 2.06 ("The county shall not have the power, under any circumstances ... to change the status, duties, or responsibilities of the county officers specified in section 1(d), art. VIII of the state constitution.").
[6] See City of Jacksonville Charter § 12.06 ("The office of the clerk of the circuit and county court shall continue....").
[7] We do not address and therefore our opinion should not be read as determining whether a charter county has the authority to abolish the office of clerk of the circuit court. See art. VIII, § 1(d), Fla. Const. ("There shall be... a clerk of the circuit court; except, when provided by county charter or special law approved by vote of the electors of the county... any county office may be abolished...."); but see art. V, § 16, Fla. Const. ("There shall be in each county a clerk of the circuit court who shall be selected pursuant to the provisions of Article VIII, section 1."); but see also art. VIII, § 6(e), Fla. Const. (incorporating article VIII, section 9, 1885 Florida Constitution (1935), relating to Jacksonville and Duval County).
[8] While this provision was in the 1885 Florida Constitution and has been superseded by the 1968 Florida Constitution, we note that article VIII, section 1(d), of the current constitution is materially similar. Like the county officer positions at issue in the instant case, the superintendent of public instruction was an office authorized by the Florida Constitution to be filled by election.

Article VIII, section 6, Florida Constitution (1885), provided in pertinent part:
SECTION 6. "Election of county officers; terms.The Legislature shall provide for the election by the qualified electors in each County of the following County Officers: A Clerk of the Circuit Court, a Sheriff, Constables, a County Assessor of Taxes, a Tax Collector, a Superintendent of Public Instruction and a County Surveyor. The term of office of all County officers mentioned in this Section shall be four years...."
[9] There are other isolated disqualifications referenced in other provisions of the Florida Constitution. See, e.g., art. IV, § 5(b), Fla. Const. (imposing gubernatorial term limit); see also art. V, § 8, Fla. Const. ("No justice or judge shall serve after attaining the age of seventy years.... "). Moreover, we have held invalid the term limit provisions pertaining to Florida's congressional delegation because those limits violated the Qualifications Clause of the United States Constitution. See Ray v. Mortham, 742 So.2d 1276, 1281 (Fla.1999).
[10] We recognize that in Ray v. Mortham, 742 So.2d 1276, 1285 (Fla.1999), we stated that we "identified the amendment [in Advisory Opinion ] as one imposing a qualification on holding office" and cited to Advisory Opinion, 592 So.2d at 228, for this proposition. Based upon the plain language used in Advisory Opinion, 592 So.2d at 228, and our reliance on that passage in Ray, 742 So.2d at 1285, we now clarify that our reference in Ray to "qualification" was misstated. The reference should have been to "disqualification," and we now make that correction.
[11] Section 1 of chapter 70-80 provided in pertinent part:

(2) No individual may qualify as a candidate for public office who holds another elective or appointive office, whether state, county or municipal, the term of which or any part thereof runs concurrent to the term of office for which he seeks to qualify without resigning from such office not less than ten (10) days prior to the first day of qualifying for the office he intends to seek. Said resignation shall be effective not later than the date upon which he would assume office, if elected to the office to which he seeks to qualify, or the expiration date of the term of the office which he presently holds, or the general election day at which his successor is elected, whichever occurs earlier. With regard to elective offices said resignation shall create a vacancy in said office thereby permitting persons to qualify as candidates for nomination and election to that office, in the same manner as if the term of such public officer were otherwise scheduled to expire; or, in regard to elective municipal or home rule charter county offices, said resignation shall create a vacancy which may be filled for the unexpired term of the resigned officer in such manner as provided in the municipal or county charter. This does not apply to political party offices.
(3) Any incumbent public officer whose term of office or any part thereof runs concurrent to the term of office for which he seeks to qualify and who desires to resign his office pursuant to the provisions of this act shall execute an instrument in writing directed to the governor irrevocably resigning from the office he currently occupies. The resignation shall be presented to the governor with a copy to the department of state. The resignation shall become effective and shall have the effect of creating a vacancy in office as provided herein, and the public officer shall continue to serve until his successor is elected or the vacancy otherwise filled as provided above in subsection (2).
(4) Nothing contained in this act shall relate to persons holding any federal office.