GROSS, J.
 

 We reverse the circuit court’s judgment holding that the Florida Constitution prohibited Broward County voters from amending the county charter to impose term limits upon Broward County Commissioners.
 

 In 2000, Broward County voters approved an amendment to the county charter that limited Broward County Commissioners to no more than three consecutive four year terms. William Telli challenged the term limit provision on the ground that it conflicts with the Florida Constitution. Agreeing that the case presented a question of law, both sides moved for summary judgment. The circuit court declared that the term limit provision was invalid, based on
 
 Cook v. City of Jacksonville,
 
 823 So.2d 86 (Fla.2002). The standard of review applicable to the circuit court’s granting of summary final judgment is de novo.
 
 E.g., Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000).
 

 
 *416
 

 Cook
 
 governs our analysis. The holding in
 
 Cook,
 
 by its express language, applies only to the county officers specified in article VIII, section 1(d) of the Florida Constitution — “a sheriff, a tax collector, a property appraiser, a supervisor of elections, and a clerk of the circuit court.” Art. VIII, § 1(d), Fla. Const.;
 
 Cook,
 
 823 So.2d at 90, 94-95. The issue here is whether
 
 Cook’s
 
 reasoning and the language of article VIII, section 1 support the extension of
 
 Cook’s
 
 holding to the voters’ adoption of term limits on county commissioners in a charter county. We conclude that such an expansion of
 
 Cook
 
 is inappropriate when the case is read in light of the broad powers accorded charter counties by sections 1(e) and 1(g) of article VIII.
 

 Cook
 
 consolidated two appeals:
 
 City of Jacksonville v. Cook,
 
 765 So.2d 289 (Fla. 1st DCA 2000), and
 
 Pinellas County v. Eight is Enough in Pinellas,
 
 775 So.2d 317 (Fla. 2d DCA 2000). The first case involved a 1992 amendment to the Jacksonville Charter, which imposed a two-term limit on, among other offices, the clerk of the circuit court.
 
 Cook,
 
 823 So.2d at 87-88. The trial court ruled that the amendment was an unconstitutional attempt to impose new disqualifications on a state office, and ordered the supervisor of elections to accept the clerk’s filing to run for another term.
 
 Id.
 
 at 88. The first district reversed, and held that because the Florida Constitution did not establish any qualifications or disqualifications for the office of clerk of the circuit court, the power to impose disqualifications in the form of term limits was within Jacksonville’s broad home-rule powers.
 
 Id.
 

 The second appeal in
 
 Cook
 
 involved a 1996 amendment to the Pinellas County Charter that imposed term limits on county officers, including the board of county commissioners, sheriff, tax collector, property appraiser, supervisor of elections, and clerk of the circuit court.
 
 Id.
 
 at 88-89. The trial court upheld the limits as within the county’s home rule powers.
 
 Id.
 
 at 89. The second district affirmed, holding that no constitutional provision prevented the county from imposing term limits on county officers.
 
 Id.
 
 at 89-90. The incumbent clerk of the circuit court, tax collector, and sheriff petitioned for review, but the board of county commissioners did not.
 
 Id.
 
 at 90. The failure of the county commissioners to seek review is significant to this case because it had the effect of removing that office from the holding of
 
 Cook.
 

 The Supreme Court reversed the district court decisions. The reasoning in
 
 Cook
 
 may be briefly summarized. First, the Supreme Court held that “a term limit provision is a disqualification from election to office.”
 
 Id.
 
 at 92 (citing
 
 Advisory Opinion to the Attorney Gen.—Limited
 
 Political T
 
 erms in Certain Elective Offices,
 
 592 So.2d 225 (Fla.1991)). Next, the Court held that “article VI, section 4, Florida Constitution, imposes those disqualifications which may be validly imposed upon offices authorized by the Constitution.”
 
 Id.
 
 at 92-93. The Court relied on the canon of construction
 
 expressio unius est exclusio altenus,
 
 and held that the imposition of term limits by article VI, section 4(b), Florida Constitution, on certain constitutionally authorized offices necessarily excluded their imposition on other offices, except by constitutional amendment. “By the constitution identifying the offices to which a term limit disqualification applies, we find that it necessarily follows that the
 
 constitutionally authorized offices
 
 not included in article VI, section 4(b), may not have a term limit disqualification imposed.”
 
 Cook,
 
 823 So.2d at 93-94 (Italics supplied). Crucial to this case is what the Supreme Court meant by its use of the term “constitutionally authorized offices”
 
 *417
 
 and the other variations of that phrase in
 
 Cook.
 

 [1]
 

 Cook
 
 explicitly held that a county may not amend its charter to impose term limits on section 1(d) county officers: sheriff, tax collector, property appraiser, supervisor of elections, and clerk of the circuit court.
 
 [2]
 
 Applying this express holding, we conclude that
 
 Cook
 
 used the term “constitutionally authorized offices” to refer to those offices enumerated in section 1(d).
 

 Cook
 
 did not deal with term limits for the board of county commissioners, and nowhere discusses the scope or impact of sections 1(e) and (g) as they pertain to the voters’ ability to limit the terms of county commissioners in a charter county. In order to determine whether
 
 Cook’s
 
 holding should be extended to apply to county commissioners, or other members of a county’s governing body under article VIII, section 1(e), Florida Constitution, we must decide whether county commissioners should be characterized as “officers authorized by the constitution” within the meaning of that phrase as used in
 
 Cook.
 

 Technically, all officers of the state, however minor or important, are “authorized by the constitution,” because their powers flow in some way from the Florida Constitution. There is a crucial difference, however, between the offices described in sections 1(d) and 1(e). The section 1(d) officers are established with precise language; by contrast, the section 1(e) “commissioners” are described as a default option when a county charter does not provide otherwise. Section 1(d) establishes that a county government shall have certain named officers, and grants the county limited powers to change the manner of electing those officers, or to abolish an office altogether and transfer its duties to another county office. Section 1(e), on the other hand, does not unalterably establish the office of “county commissioner;” rather, that subsection provides for county commissioners only as a fallback option. When a county fails to establish a governing body in its charter, that governing body shall take the form of a board of county commissioners, with five or seven members, serving staggered terms of four years. Section 1(e) does not require a county to organize its governing body in such a way. To equate the legal effect of the two sections — to say that section 1(e) establishes county officers with the same exactness as section 1(d) constitutional officers — would be to ignore the first seven words of subsection 1(e): “Except when otherwise provided by county charter.... ” The language of the Constitution expressly cedes power to a county charter when it comes to the creation of a county’s governing body.
 

 This constitutional power of a charter county over its governing body is further amplified by article VIII, section 1(g), Florida Constitution, establishing broad home rule powers for charter counties. Section 1(g) invests charter counties with broad powers to govern within their own territory and organize their governing apparatus as the voters see fit. “[The Supreme] Court has broadly interpreted the self-governing powers granted charter counties under article VIII, section 1(g) of the Florida Constitution.”
 
 State v. Broward Cnty.,
 
 468 So.2d 965, 969 (Fla.1985)
 
 *418
 
 (footnote omitted);
 
 see also Hollywood, Inc. v. Broward Cnty.,
 
 431 So.2d 606, 609 (Fla. 4th DCA 1983) (“Through this provision [section 1(g) ], the people of Florida have vested broad home rule powers in charter counties such as Broward County.”). Extending
 
 Cook
 
 to apply to county officers other than those expressly established by section 1(d) would unduly limit charter counties’ constitutional powers of self-government under section 1(g). Where the Constitution gives free rein to the type of governing body a charter county may create, it is not a stretch of constitutional logic to conclude that a county charter may limit the terms of those commissioners it chooses to have.
 

 In addition to the language of article VIII, section 1, sound public policy supports our conclusion that
 
 Cook’s
 
 holding regarding section 1(d) county officers should not be extended to cover section 1(e) county officers. For county officers authorized by section 1(d), there are strong practical grounds for requiring statewide uniformity. Persons traveling and doing business between counties should deal with a common set of section 1(d) county officers, i.e., sheriff, tax collector, property appraiser, supervisor of elections, clerk of the circuit court, and should not be forced to navigate byzantine bureaucracies to accomplish similar tasks. Likewise, legislators seeking to regulate section 1(d) county officers should not be forced to take a variety of different titles and job descriptions into account in order to achieve a single legislative objective. Instead, the Constitution sensibly encourages charter counties to adopt a standard distribution of responsibilities among five constitutionally authorized county officers, defining and limiting the possible objects of state regulation.
 

 But these reasons for statewide uniformity are less applicable to the county’s governing body, whether it takes the form of a board of commissioners, as provided by the “default” option under section 1(e), or some other form, as provided by the county’s charter. The organization of a county’s governing body, exercising broad powers of home rule over its own territory, need not be kept uniform by the Constitution, but may rather be fashioned to suit the particular wants and needs of the voters of the county they serve. The difference in constitutional status between section 1(d) county officers and the section 1(e) county governing body therefore reflects the common sense conclusion that, as a matter of policy, the balance of state and local interests favors statewide uniformity for the former, and local flexibility for the latter.
 

 Finally, we note that in Florida the common meaning of the term “constitutional officers” refers to the five offices set forth in article VIII, section 1(d), Florida Constitution. Although not all counties use the term “constitutional officers” to organize their websites, those counties that do employ that term omit county commissioners from their list of constitutional officers.
 
 [3]
 

 Cook
 
 did not use the term “constitutional officers,” but rather the similar, though perhaps slightly different, phrase “constitutionally authorized officers,” and variations thereon.
 
 See supra
 
 note 1.
 
 *419
 
 But inasmuch as the meaning of those phrases tracks the more familiar concept of a “constitutional officer,” we note that the counties themselves do not appear to consider county commissioners “constitutional officers,” and generally restrict that term to section 1(d) county officers. We see nothing in
 
 Cook
 
 to suggest that the Supreme Court intended to depart from common usage and impart an entirely new and unfamiliar meaning to the term.
 
 [4]
 

 For these reasons, we decline to extend the holding in
 
 Cook
 
 to apply to members of a county’s governing body under article VIII, section 1(e), Florida Constitution, and hold that the voters may amend a county’s charter, if they choose, to impose term limits on county commissioners. We choose not to certify a question to the Florida Supreme Court. If we have incorrectly delineated the scope of
 
 Cook,
 
 our failure to apply it here would be in conflict with that opinion, so that the Supreme Court could take discretionary jurisdiction of this case.
 
 See
 
 Fla. R.App. P. 9.030(a) (2) (iii), (iv).
 

 WARNER and POLEN, JJ., concur.
 

 [1]
 

 . In
 
 Cook,
 
 the Supreme Court described its holding as applying to "offices authorized by the Constitution,” "positions authorized by the constitution,” and “constitutionally authorized offices.” 823 So.2d at 90, 92, 93, 94, & 95.
 

 [2]
 

 . The Court wrote in its “Conclusion":
 

 We find that Article VI, section 4(a), Florida Constitution, provides the only disqualifications applicable to the county offices established by article VIII, section 1(d), Florida Constitution.
 

 Cook,
 
 823 So.2d at 94-95.
 

 [3]
 

 .
 
 See
 
 Bay Cnty. Online, http://www.co.bay.fl. us (listing "Constitutional Offices” separately from county commissioners) (last visited Aug. 4, 2011); Broward.org, Links, Constitutional Officers, http://www.broward.org/Links/Pages/ default.aspx# officers (including state attorney and public defender but excluding county commissioners) (last visited Aug. 4, 2011); Clay Cnty., http://www.claycountygov.com (listing "Constitutional Officers” separately from county commissioners) (last visited Aug. 4, 2011); Collier Cnty., Constitutional Offices, http://www.colliergov.net/Index.aspx?page= 47 (excluding county commissioners) (last visited Aug. 4, 2011); Columbia Cnty. Online, http://columbiacountyfla.com (listing "Consti
 
 *419
 
 tutional Officers & Elected Officials” and excluding county commissioners) (last visited Aug. 4, 2011); Dixie Cnty., Constitutional Officers, http://dixie.fl.gov/Ppage — id=193 (including county judge and superintendent of schools but excluding county commissioners) (last visited Aug. 4, 2011); Franklin Cnty., http://www.franklincountyflorida.com (listing "Constitutional and Other Officers” separately from Board of Commissioners) (last visited Aug. 4, 2011); Gadsden Cnty., Constitutional Officers, http://www.gadsdengov.net/index. aspx?page=134 (excluding county commissioners) (last visited Aug. 4, 2011); Hendry Cnty., Constitutional Officers, http://www. hendryfla.net/officers.htm (including public defender, state attorney, and circuit court, but excluding county commissioners) (last visited Aug. 4, 2011); Highlands Cnty., http://www. hcbcc.net (listing "elected officials” comprising constitutional officers separately from county commissioners) (last visited Aug. 4, 2011); Hillsborough Cnty., Government, http://www.hillsboroughcounty.org/ government (listing "Constitutional Offices” separately from county commissioners) (last visited Aug. 4, 2011); Jefferson Cnty., http:// www.jeffersoncountyfl.gov (listing the "County Department[ ]” of county commissioners separately from "Constitutional Officers”) (last visited Aug. 4, 2011); Lee Cnty., Constitutional Officers, http://www.lee-county.com/ gov/cons titutionaloffices/Pages/default.aspx (including courts, public defender, and state attorney, but excluding county commissioners) (last visited Aug. 4, 2011); Madison Cnty., Constitution Officers, http: //www. madisoncountyfl.com/govemment-links.aspx (excluding county commissioners) (last visited Aug. 4, 2011); Monroe Cnty., Constitutional Officers, http://www.monroecounty-fl.gov/ index.aspx?NID=305 (excluding county commissioners) (last visited Aug. 4, 2011); Okeechobee Cnty., Constitutional Officers, http:// www.co.okeechobee.fl.us/constitutionals (excluding county commissioners) (last visited Aug. 4, 2011); Osceola Cnty., Constitutional Officers, http://www.osceola.org/elected officials/165-4887-0/ constitutional — officers.cfm (excluding county commissioners) (last visited Aug. 4, 2011); Supervisor of Elections, Pasco Cnty., Government — Constitutional Officers, http://www.pascovotes.com/ pccon.asp (including the public defender and state attorney, but excluding county commissioners) (last visited Aug. 4, 2011); Pinellas Cnty., The Constitutional Officers of Pinellas County: A Brief History (2d ed. 2006) (excluding county commissioners), available at http://www.pinellascounty.org/PDF/HEObook. pdf; St. Lucie Cnty., Constitutional Officers, http://www.stlucieco.gov/constitutionaL officers.htm (excluding county commissioners) (last visited Aug. 4, 2011); Taylor Cnty., http://taylorcountygov.com (listing constitutional officers separately from county commissioners) (last visited Aug. 4, 2011).
 

 [4]
 

 . We do not decide whether county commissioners are “constitutional officers” for any other purpose, only that they are not "constitutionally authorized officers” within the meaning of that phrase, and related phrases, as used in
 
 Cook.