PER CURIAM.
This case is before the Court for review of the decision of the Fourth District Court of Appeal in Snipes v. Telli, 67 So.3d 415 (Fla. 4th DCA 2011), which held that the Florida Constitution permits Bro-ward County to impose term limits on the office of county commissioner.[1] Because we recede from this Court’s decision in Cook v. City of Jacksonville, 823 So.2d 86 (Fla.2002), we approve the Fourth District’s decision and hold that Broward County’s term limits do not violate Florida’s Constitution.
I. BACKGROUND
In 2000, Broward County voters approved an amendment to the Broward County charter providing for term limits on county commissioners. The charter, as amended, limited county commissioners to no more than three consecutive four-year terms:
Effective with the terms of the Commissioners that commenced in November 2000, an individual shall not be eligible for election as a Commissioner for more than three consecutive four-year terms. Service as a Commissioner prior to the terms that commenced in November 2000 shall not be considered in applying the term limitations of this Section. Service of a two-year term, or any other partial term subsequent to November 2000, shall not be considered in applying *506 the term limitation provisions of this Section.
Broward Cnty. Charter art. II, § 2.02 (2010).
In February 2010, William Telli filed a complaint against Broward County[2] for declaratory relief in the Seventeenth Judicial Circuit, arguing that the term limits were unconstitutional under the Florida Constitution. The Seventeenth Judicial Circuit Court found that this Court’s decision in Cook, 823 So.2d 86, required a determination that Broward County’s term limits for commissioners were unconstitutional. Broward County appealed to the Fourth District.
The Fourth District reversed the circuit court’s judgment. Snipes, 67 So.3d at 415. In reversing,' the Fourth District reasoned that, because “[t]he holding in Cook, by its express language,” did not apply to county commissioners, it would have to extend Cook’s holding in order to find those term limits unconstitutional. Id. at 416. The Fourth District further “conclude[d] that such an expansion of Cook is inappropriate when the case is read in light of the broad powers accorded charter counties” in the Florida Constitution. Id.
The Fourth District drew a distinction between the article VIII, section 1(d) offices at issue in Cook and the office of county commissioner as set forth by article VIII, section 1(e). See 67 So.3d at 419. Specifically, the Fourth District found that the office of county commissioner is not a “constitutionally authorized office” for purposes of our determination in Cook that “constitutionally authorized offices” can only be term-limited by amendment to the constitution. Id. at 418.
II. ANALYSIS
Provisions throughout the Florida Constitution impose or specifically delegate imposition of “qualifications” for specific offices.[3] But in Cook, this Court held that term limit provisions imposed disqualifications from office, and that article VI, section 4, of the Florida Constitution, entitled “Disqualifications,” “provides the exclusive roster of those disqualifications which may be permissibly imposed.” Cook, 823 So.2d at 90. Article VI, section 4, provides:
(a) No person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability.
(b) No person may appear on the ballot for re-election to any of the following offices:
(1) Florida representative,
(2) Florida senator,
(3) Florida Lieutenant governor, [or]
(4) any office of the Florida cabinet,[4] *507 if, by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for eight consecutive years.
At the time article VI was amended to include section 4(b), separate constitutional provisions already imposed term limits on the governor, art. IV, § 5(b), Fla. Const. (1992), and age limits on justices and judges, art. V, § 8, Fla. Const. (1992).
Not allowing Broward County in this case to decide whether its county commissioners should be subject to term limits brings into focus the broad implication of the Court’s prior ruling in Cook, and the limitation it has on the exercise of Florida counties’ home rule power as authorized by the Florida Constitution. The Fourth District properly described the holding in Cook and the issue with which it was presented:
The reasoning in Cook may be briefly summarized. First, the Supreme Court held that “a term limit provision is a disqualification from election to office.” Id. at 92 (citing Advisory Opinion to the Attorney Gen. — Limited Political Terms in Certain Elective Offices, 592 So.2d 225 (Fla.1991)). Next, the Court held that “article VI, section 4, Florida Constitution, imposes those disqualifications which may be validly imposed upon offices authorized by the Constitution.” Id. at 92-93. The Court relied on the canon of construction expressio unius est exclusio alterius, and held that the imposition of term limits by article AT, section 4(b), Florida Constitution, on certain constitutionally authorized offices necessarily excluded their imposition on other offices, except by constitutional amendment. “By the constitution identifying the offices to which a term limit disqualification applies, we find that it necessarily follows that the constitutionally authorized offices not included in article VT, section 4(b), may not have a term limit disqualification imposed.” Cook, 823 So.2d at 93-94 ( [emphasis] supplied). Crucial to this case is what the Supreme Court meant by its use of the term “constitutionally authorized offices” and the other variations of that phrase in Cook.
67 So.3d at 416-17.
In Cook, 823 So.2d at 87-88, this Court reviewed two consolidated cases in which county charters were amended to impose term limits on, among other officers, those county officers listed in article VIII, section 1(d), of the Florida Constitution: sheriff, tax collector, property appraiser, supervisor of elections, and clerk of the circuit court. The two consolidated cases, from the First and Second District Courts of Appeal, are described below.
Cook v. City of Jacksonville— First DCA
In the 1992 general election, the voters in Duval County cast separate votes to amend the Charter of the Consolidated City of Jacksonville to impose a two-term limitation on the sheriff, supervisor of elections, properly appraiser, tax collector, clerk of the circuit court, members of the Duval County school board, and member of the Civil Service Board. 823 So.2d at 87. Each section of a proposed ordinance amending the charter was voted upon separately, with the voters approving the ordinance as it related to the clerk of the circuit court. Id. Section 12.11 of the charter, as adopted, provided:
Section 12.11. Two term limit. — No person elected and qualified for two consecutive full terms as Clerk of the Court shall be eligible for election as Clerk of the Court for the next succeeding term. The two-term limitation shall apply to any full term which began in 1992 or thereafter.
Id. at 88.
In 1988, Henry W. Cook was appointed clerk of the circuit and county courts for *508 Duval County. Id. He was subsequently elected in 1988 and was reelected in 1992 and 1996. Id. Under section 12.11 of the charter, Cook could not run for clerk in 2000. Id. In November, 1998, Cook presented the Duval County supervisor of elections with his “Statement of Candidate” papers, which indicated his intent to seek reelection as clerk. Id. The supervisor of elections refused to accept the completed papers. Id.
Cook, in his individual capacity, sued the City'of Jacksonville and the supervisor of elections for a declaratory judgment, seeking to invalidate section 12.11 of the charter, and a writ of mandamus directing the supervisor of elections to accept his candidacy papers. Id. Cook presented the testimony of former Justice Alan Sundberg concerning the conflict within Florida’s constitution between article V, section 16, which provides that there “shall” be a clerk of the circuit court in each county, and article VIII, section 1(d), which provides that the term of office for the clerk of the circuit court is four years, just as it is for the other officers established in that section: the sheriff, tax collector, property appraiser, and supervisor of elections. See City of Jacksonville v. Cook, 765 So.2d 289 (Fla. 1st DCA 2000), quashed, 823 So.2d 86 (Fla.2002).
The trial court concluded that nothing in article VIII, section 1(d) authorized the City to impose additional qualifications or disqualifications, rather that the provision only provided for the manner by which the clerk was to be selected pursuant to article V, section 16. Cook, 828 So.2d at 88. The trial court held that section 12.11 added an additional qualification and thus was unconstitutional. Id. Accordingly, the trial court granted mandamus and ordered the supervisor of elections to accept Cook’s candidacy papers. Id. The First District held that the charter provision was constitutional and reversed. See Cook, 765 So.2d at 293.
The First District analyzed applicable Florida Supreme Court cases and held that the charter’s term limit was not unconstitutional as an additional qualification for the clerk of the court because it was not expressly prescribed by the Florida Constitution. Id. at 289-93. The First District discussed State ex rel. Askew v. Thomas, 293 So.2d 40 (Fla.1974), where the Florida Supreme Court “held that a state or local qualification for a constitutional office is only unconstitutional if it conflicts with a qualification for that office set forth in the constitution.” Cook, 765 So.2d at 291. The Askew Court concluded that Florida’s Constitution did not address qualifications for school board members, and only addressed the manner of choosing the members. 293 So.2d at 42. Therefore, the Askew Court concluded that the statute providing that the office of a school board member shall be vacant when the member removes residence from the area from which elected was not contrary to the constitution. Id. The First District then concluded that, under Askew, the term limit under the county charter was constitutional. Cook, 765 So.2d at 291.
Similarly, the First District relied on State v. Grassi, 532 So.2d 1055 (Fla.1988), to hold that the charter’s term limit was constitutional. See 765 So.2d at 291-92. In Grassi, a county commission candidate challenged a statutory requirement that he be a resident prior to election as in conflict with the constitutional requirement of residency in the commissioner’s district at the time of election. Id. at 292. This Court, in Grassi, stated, “We have consistently held that statutes imposing additional qualifications for office are unconstitutional where the basic document of the constitution itself has already undertaken to set forth those requirements.” 532 So.2d at *509 1056 (quoting Askew, 293 So.2d at 42). The Grassi Court construed the Florida Constitution, which required that one commissioner “residing in each district shall be elected by the electors of the county,” as requiring residency at the time of election. Id. (quoting art. VIII, § 1(e), Fla. Const. (1968)). Therefore, the Court held in Grassi that the statutory requirement of residency at the time of qualifying for the election was an unconstitutional additional qualification. Id.
The First District also noted that the trial court had relied on two older cases, and distinguished them:
The trial court in the instant case relied on two cases which preceded Askew and Grassi to support its position that the constitution does not authorize Jacksonville to establish qualifications for the office of the clerk of the court: State ex rel. Attorney General v. George, 23 Fla. 585, 3 So. 81 (1887); and Thomas v. State ex rel. Cobb, 58 So.2d 173 (Fla.1952). In Cobb, the supreme court relied upon the opinion in George and held that the constitution prescribed qualifications for governor, senators, members of the House of Representatives, and circuit and supreme court judges, but no others. See Cobb, 58 So.2d at 176-177. The Cobb court further held that the constitution’s silence as to qualifications for other officers indicated the framers’ intent that any person should be allowed to run for office regardless of qualifications. See id. at 180-181. Nevertheless, the Cobb court’s actual conclusion was similar to that held by the supreme court in Askew and Grassi, in that the Cobb court held that the Florida statute at issue was unconstitutional because it prescribed qualifications for the office of superintendent of public instruction in addition to those prescribed by the constitution. See id. at 183. Such a conclusion is not inconsistent with the supreme court’s later decisions in Askew and Grassi. Justice Terrell’s concurring opinion in Cobb reached the same conclusion the court reached in Askew 22 years later. Justice Terrell wrote,
I do not agree with the general theory of the majority opinion that the legislature can require nothing more in the way of qualification for county superintendent of public instruction than that he be a qualified elector of a prescribed age and such others as are mentioned for county and state offices generally. I think it competent for the legislature to prescribe liberal educational, professional and other qualifications for those who contemplate being appointed or who expect to run for the office of County Superintendent of Public Instruction. There is no prohibition in the constitution against this, and being none, the way is open for the legislature to prescribe such qualifications.
Id. at 184 (Terrell, J., concurring) (emphasis added).
765 So.2d at 292.
The First District noted that Jacksonville’s home rule powers gave it' authority to establish a governmental framework that “may affect all county officers enumerated in the constitution, which would include establishing term limit qualifications for the clerk of the circuit and county court.” Id. at 293. Because Florida’s Constitution is silent in both article V, section 16, and article VIII, section 1(d) as to specific qualifications for clerk of the court, the First District held that Jacksonville was not precluded from adopting and enforcing term limits. Id.

DeBlaker v. Eight .is Énough in Pinellas-r-Second DCA

Pinellas County is a charter county whose charter was initially proposed by special law. Cook, 823 So.2d at 88-89 (citing ch. 80-590, Laws of Fla.) The Pinel- *510 las County electorate ratified the charter in 1980. Id. Pursuant to the terms of the Pinellas County Charter, Eight is Enough in Pinellas, a political committee, initiated a petition drive to amend the charter. Id. at 89. “The goal of the initiative was to impose term limits on members of the board of county commissioners, the sheriff, tax collector, property appraiser, supervisor of elections, and clerk of the circuit court.” Id. The Pinellas County electorate adopted the term limit amendment with one vote applicable to all positions in the 1996 general election. Id. The amended provisions of the charter read:
Sec. 3.01. Board of county commissioners.
The legislative body of county government shall be the board of county commissioners in accordance with general law. The composition, election, term of office and compensation of members shall all be in accordance with general law except that no person may appear on the ballot for re-election to the office of county commissioner if, by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for eight consecutive years.
Sec. 4.08. County officers.
This document [Charter] shall in no manner change the status, duties, or responsibilities of the [following] county officers of Pinellas County: The clerk of the circuit court, property appraiser, tax collector, sheriff, and supervisor of elections except that no person may appear on the ballot for re-election to the office of clerk of the court, property appraiser, tax collector, sheriff or supervisor of elections if, by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for eight consecutive years.
Pinellas County v. Eight is Enough in Pinellas, 775 So.2d 317, 319 n. 2 (Fla. 2d DCA 2000) (emphasis represents language added as a result of 1996 ratification vote), quashed sub nom., Cook v. City of Jacksonville, 823 So.2d 86 (Fla.2002).
Other relevant provisions of the Pinellas County Charter included:
Sec. 2.01. Powers and duties.
The county shall have all powers of local self-government not inconsistent with general law, with special law approved by vote of the electors, or with this Charter.
[[Image here]]
Sec. 2.06. Limitation of power.
The county shall not have the power, under any circumstances ... to change the status, duties, or responsibilities of the county officers specified in section 1(d), art. VIII of the state constitution.
Pinellas Cnty. Charter art. II, § 2.01, 2.06.
In 1996, Clair Johnson, a resident and registered voter of Pinellas County, sued the county seeking a declaratory judgment that the proposal was invalid, and an injunction prohibiting the proposal from being placed on the ballot. See Cook, 823 So.2d at 89. Eight is Enough and its chairman intervened. Id. The trial court denied Johnson’s motion for summary judgment and motion for temporary and permanent injunction on September 6, 1996, finding the proposed amendment was not contrary to the state constitution and that the ballot language did not violate section 101.161, Florida Statutes (1995). Id. The trial court also found that the disqualifications enumerated in article VI, section 4, Florida Constitution, did not prohibit charter counties from imposing term limits within their counties. Id. Finally, the trial court found within the constitutional grant of home rule authority (article VIII, section 1(g), Florida Constitution) the authorization for a charter *511 county to impose term limits on its county officers and board of county commissioners. Id.
Shortly thereafter, Fred Petty as tax collector, Karleen DeBlaker as the clerk of the circuit court, Everett Rice as sheriff, Jim Smith as property appraiser, and Dorothy Ruggles as supervisor of elections intervened as plaintiffs. Id. On January 26, 1999, after further proceedings, the trial court issued an amended order and final judgment. Id. In that order, the trial court ratified its order of September 6, 1996. Id. The trial court further held that the charter conferred plenary power on Pinellas County subject to the constraints of the charter, and that nothing in the charter required submission of charter amendments to the Legislature for its approval. Id.
Pinellas County, the clerk of the circuit court, tax collector, sheriff, supervisor of elections, property appraiser, and Johnson appealed the amended order to the Second District. Id. The Second District rejected the argument that the Legislature in passing the special law which became the charter reserved to itself the sole authority to propose charter amendments. See Pinellas County v. Eight is Enough in Pinellas, 775 So.2d 317, 319 (Fla. 2nd DCA 2000). The Second District also rejected the argument that the charter itself by virtue of sections 2.06 and 4.03 prohibited the term limit amendment. See id. at 319-20. The Second District found that term limits did not affect the “status, duties, or responsibilities” of the county officers. Id. The court likewise found that a term limit amendment did not affect the “composition, election, term of office and compensation of [county commission] members.” See id. at 320. The Second District then found no statutes or constitutional provisions prohibiting a charter county from imposing term limits. See id. Accordingly, the Second District affirmed the trial court. Id.
Cook v. Jacksonville — Florida Supreme Court
This Court in Cook quashed both district court decisions, concluding instead that the county charter-imposed term limits on those offices were unconstitutional:
[AJrticle VI, section 4, Florida Constitution, provides the only disqualifications which may be imposed upon offices authorized by fhe constitution. Clearly, by virtue of article VI, section 4(b), the Florida Constitution contemplates that term limits may be permissibly imposed upon certain offices authorized by the constitution. By the constitution identifying the offices to which a term limit disqualification applies, we find that it necessarily follows that the constitutionally authorized offices not included in article VI, section 4(b), may not have a term limit disqualification imposed. If these other constitutionally authorized offices are to be subject to a term limit disqualification, the Florida Constitution will have to be amended to include those offices.
Cook, 823 So.2d at 93-94. This Court further noted in Cook that the “the broad authority granted to charter counties” does not include the authority to impose additional “disqualifications which pertain to these offices authorized by the constitution.” Id. at 94.
The Court distinguished the First District’s reliance on Askew on the basis that Askew involved qualifications, but the issue before it related to disqualifications. Id. The Second District was not found persuasive by the Court on the rationale that the county charter must still comply with the Florida Constitutional provision on disqualifications. Id.
Justice Anstead dissented and indicated that he would affirm both the First and *512 Second Districts’ opinions. Id. at 95-96. He analyzed the broad home rule authority granted to charter counties under the Florida Constitution:
This broad language was obviously intended to allow charter counties wide latitude in acting regulations governing the selection and duties of county officers .... The term limit provisions in the charters in these cases are not inconsistent with any provision of general law relating to elected county officers. Given this grant of broad authority and consistency with general law, I can find no legal justification for concluding that charter counties should not be allowed to ask their citizens to vote on eligibility requirements of local elected officials, including term limits, since they could abolish the offices completely or decide to select the officers in any manner of their choosing.
Id. at 96.
Justice Anstead also disagreed with the majority’s position that article VI, section 4(b), Florida Constitution, listing the state elected offices with mandatory term limits, somehow excluded charter counties from imposing term limits. Id. He pointed out that there was “no wording in article VI, section 4(b) (or anywhere else in the Florida Constitution or the Florida Statutes) that indicates that the named officers in article VI, section 4(b) are subject to term limits to the exclusion of all other government officers, state or local, in the State of Florida.” Id. The “disqualification” distinction was not persuasive to him because regardless of whether it is called a “qualification” or “disqualification,” it determines whether someone will hold office. Id. “[T]he reference to term limits as a ‘disqualification’ cannot logically be stretched to mean that the absence of a reference to county offices in article VI, section 4(b) precludes term limits from being enacted at the county level.” Id.

This Case

The implied prohibition in Cook against term limits for county officers and county commissioners from the lack of inclusion in article VI, section 4, of the Florida Constitution, overly restricts the authority of counties pursuant to their home rule powers under the Florida Constitution. The opinions of the First and Second Districts should have been affirmed, as Justice An-stead stated in his dissenting opinion. Because we now agree with Justice Anstead’s dissenting opinion, and recede from Cook, we need not reach the issue of whether the office of county commissioner is one of those constitutional offices to which .Cook applies.
As described in Brown v. Nagelhout, 84 So.3d 304 (Fla.2012), stare de-cisis does not yield just because a precedent is merely erroneous; the “gravity of the error and the impact of departing from precedent must be carefully assessed,” guided by the following factors:
In deciding whether to depart from a prior decision, one relevant consideration is whether the decision is “unsound in principle.” Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 546, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Another is whether it is “unworkable in practice.” Ibid. And, of course, reliance interests are of particular relevance because “[ajdherence to precedent promotes stability, predictability, and respect for judicial authority.” Hilton v. South Carolina Public Railways Comm’n, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (citing Vasquez v. Hillery, 474 U.S. 254, 265-266, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)).
*513 Id. at- 309 (quoting Allied-Signal, Inc. v. Dir., Div. of Taxation, 504 U.S. 768, 783, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992)).
In this case, the prior opinion in Cook undermines the ability of counties to govern themselves as that broad authority has been granted to them by home rule power through the Florida Constitution. Interpreting Florida’s Constitution to find implied restrictions on powers otherwise authorized is unsound in principle. We agree with the First District in Cook that express restrictions must be found, not implied.
It is unworkable to negotiate the type of distinctions that the Fourth District made in determining whether the county commissioners are constitutional officers subject to the Court’s Cook opinion. It would undermine the ability to predict what offices may be included within the scope of Cook’s prohibition on term limits and would result in apparent inconsistencies between county officials. Receding from the Cook decision will promote stability in the law by allowing the counties to govern themselves, including term limits of their officials, in accordance with their home rule authority. Because the qualifying deadlines have not occurred, there are no reliance issues implicated by this ruling.
III. CONCLUSION
Based on the foregoing, we recede from Cook and the rationale it relied upon in Thomas v. State ex rel. Cobb. Therefore, we hold that the term limits provided in Broward County’s charter do not violate the Florida Constitution, and approve the Fourth District on different grounds.
Any motion for rehearing must be filed within five days of the date of this opinion, and any response must be filed within three days of the filing of the motion.
It is so ordered.
CANADY, C.J., and PARIENTE, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result only.

. This Court has jurisdiction to review the decision. See art. V, § 3(b)(3), Fla. Const. We review de novo questions of constitutional interpretation. Browning v. Fla. Hometown Democracy, Inc., 29 So.3d 1053, 1063 (Fla.2010).

. The complaint also named Dr. Brenda C. Snipes, in her official capacity as Supervisor of Elections for Broward County.

. -See, e.g., art. II, § 5, Fla. Const, (public officers); art. Ill, §§ 5, 15, Fla. Const, (legislators); art. IV, § 5, Fla. Const, (governor, lieutenant governor, and cabinet members), art. IV, § 8, Fla. Const. (Parole and Probation Commission); art. V, § 8, Fla. Const, (justices and judges); art. V, § 12(a), Fla. Const. (Judicial Qualifications Commission); art. V, § 18, Fla. Const, (public defenders).

. Subsections (5) and (6), imposing the same term limits on U.S. Representatives and Senators from Florida, have been omitted. This Court's decision in Ray v. Mortham, 742 So.2d 1276 (Fla.1999), severed subsections (5) and (6) and rendered them unenforceable as violative of the Qualifications Clause of the Tenth Amendment to the United States Constitution.